Little, Appellant, *v.* Straw.

Argued May 25, 1937. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Paul A. Kunkel,* with him *George W. McKee,* for appellant.

*Arthur H. Hull,* of *Snyder, Hull, Hull & Leiby,* for appellee.

OPINION BY MR. JUSTICE STERN, June 25, 1937:

On the night of October 19, 1932, at about eleven o'clock, plaintiff was a guest passenger in an automobile owned and driven by defendant. Proceeding up the river road, near the city limits of Harrisburg, the car ran into the rear of a truck, also northbound, which had just been brought to a stop. Plaintiff was severely injured. The present action is based upon alleged negligence in the operation of the car. The court below entered a nonsuit on the ground of contributory negligence.

At the trial, plaintiff testified the automobile had been traveling at between 35 and 40 miles an hour. "Happening to glance ahead," he saw the truck, then "maybe 20 to 30 feet [away], maybe farther than that, I am just guessing." He "immediately hollered" to defendant, who thereupon swerved the car in an unsuccessful attempt to avoid the collision. Asked how far ahead the lights of the automobile shone, plaintiff answered: "Well, I would say the lights of Mr. Straw's roadster shone the same distance as other cars I had ridden in before that. Q. How many feet? A. I would be only guessing if I told you that." It was brought out, however, that in a previous trial against the owner of the truck plaintiff had testified the lights shone "around 30 or 40 feet, I guess, that is as near as I can tell you." Defendant, called as for cross-examination, said the lights of his car shone ahead "approximately fifty feet," but it appeared that, at the previous trial referred to, he had stated he thought they threw a light as far as 200 feet. It was on this testimony of plaintiff and defendant that the nonsuit was entered. The court was of opinion the

evidence established that the headlights on the car were not in accordance with section 803(a) of the Act of May 1, 1929, P. L. 905,[1] that plaintiff knew this fact, that at the rate of speed of the car it could not be stopped within the range of its lights, and that plaintiff, by tacit acceptance of this situation, forfeited his right to recover.

The court was not justified in its assumption that the lights on defendant's car did not comply with the provisions of the statute. Defendant's testimony, when called as for cross-examination, was binding on plaintiff unless contradicted, but it *was* contradicted by the testimony he had given at the former trial; therefore it cannot be held that plaintiff was concluded by defendant's present statement that the lights shone approximately fifty feet. On the other hand, the testimony of plaintiff that the lights shone around thirty or forty feet was not given as independent, substantive evidence in the present trial; his admission that he had previously so testified went only to his credibility. Incidentally, there was evidence the car had been recently inspected and given an inspection tag.

Apart from what has been said, even were it to be accepted as a fact, proved beyond the necessity of submission to the jury, that the rays cast by the headlights did not measure up to the requirements of the law, the question of contributory negligence could not properly have been withdrawn from that tribunal. There was evidence that the inadequacy of the headlights was not the efficient or proximate cause of the accident, and, if the jury had so found, this would have prevented plaintiff's alleged knowledge of the defective condition of the lights

---

[1] "The headlamps . . . of motor vehicles shall be so constructed, arranged, adjusted and attached that . . . they will . . . under normal atmospheric conditions, and on a level road, produce a driving light sufficient to render clearly discernible all vehicles, persons or substantial objects one hundred sixty (160) feet ahead, . . ."

from constituting contributory negligence on his part: *Lane v. Mullen,* 285 Pa. 161. While only fragmentary portions of the evidence are printed in the record submitted on appeal, there is a statement in the opinion of the learned court below that at the time of the collision the motor of the truck was running, and the truck . . . "was equipped with a tail-light and three green clearance lights. . . . At the time of the accident the lights were being operated by the generator and the truck driver stated they were good."[2] An examination of the original record indicates not only that this statement is borne out by the evidence, but that there was further testimony by the driver of the truck that, while the battery may have been weak and the lights therefore dim *after* the truck had come to a stop, the lights were shining *at and prior* to the accident, when they were running, not on the battery, but on the generator. In view of this evidence—whatever the testimony to the contrary—it was for the jury to say whether, irrespective of the condition of the headlights on defendant's car, he should and would have seen the rear light on the truck, if he had been properly attentive, at a distance which would have enabled him to avoid the accident. The pertinency of this inquiry is emphasized by defendant's own admission in his testimony, as follows: "Q. Mr. Straw, did you see the truck, . . . before Mr. Little yelled 'Look out'? A. No, sir, I didn't see it before Mr. Little called my attention to it. . . . Q. And . . . if you had been looking would you have seen the truck before? . . . I am asking you that if you had been looking ahead . . . could you possibly have seen the truck before you were warned by Mr. Little? A. Yes, I would say I could have under favorable conditions. Q. Under the conditions that existed at the time of this accident, if you had been

---

[2] Section 801 (d) requires that the red light on the rear of a motor vehicle must be plainly visible under normal atmospheric conditions from a distance of five hundred (500) feet to the rear of such vehicle.

looking, you could have seen it, you were the driver and could have seen it if you had been looking?  A. Yes." Thus defendant concedes the real cause of the accident to have been, not a lack of proper lighting equipment on his car, but his failure to look ahead.  It is true that plaintiff also might have observed the truck sooner had he been more vigilant.  But even if he had seen it in time to give a more effective warning, he was not bound to call defendant's attention to it at all unless he had cause to believe that defendant himself did not see it, or, seeing it, did not intend to take adequate measures to go around it in safety or other precautions to avoid hitting it.  All this was for the jury.  The highway at that point consisted of four lanes of travel; the truck stood in the one to the extreme right, so that there was ample room to pass it and no reason for plaintiff to anticipate a collision.  As a matter of fact, however, plaintiff, immediately upon seeing the truck, did call to defendant to "Look out," and when defendant was asked on cross-examination: "Was it possible for you to stop your car at the speed at which you were running after you saw the truck, in order to avoid hitting it?" he answered, "Yes, I say it was possible."  While this, of course, was a matter of opinion on defendant's part, plaintiff's estimates of the speed of the car and its distance from the truck when he warned defendant were likewise nothing but vague approximations; plaintiff was entitled to take advantage of such an admission by defendant, especially in the absence of any other evidence as to whether the car could have been stopped or diverted within the range of its headlights under all the attendant circumstances.

The order of the court below overruling plaintiff's motion to take off the nonsuit is reversed, and a venire facias de novo awarded.