James ROMER, an Infant, by His Next
Friend, John Romer and John Romer
and Mary Romer, Appellants,

v.

Claude Rodgers BALDWIN and Smith's
Transfer Corporation of Staunton,
Virginia.

No. 14180.

United States Court of Appeals
Third Circuit.

Argued March 19, 1963.

Decided May 7, 1963.

Rehearing Denied June 3, 1963.

Theodore R. Mann, Narin, Garfinkel & Mann, Philadelphia, Pa. (Stephen B. Narin, Marvin Garfinkel, Philadelphia, Pa., on the brief), for appellants.

George P. Williams, III, Schnader Harrison, Segal & Lewis, Philadelphia, Pa. (Edward C. German, LaBrum & Doak, Philadelphia, Pa., on the brief), for appellees.

Before HASTIE, GANEY and SMITH, Circuit Judges.

HASTIE, Circuit Judge.

This is an appeal from a judgment entered for the defendants pursuant to a jury's special verdict of no negligence.

The accident giving rise to the suit occurred in Philadelphia as a tractor-trailer owned by defendant Smith's Transfer Corp. and driven by its employee, defendant Baldwin, was completing a right turn into an intersecting street. Before turning, the driver had stopped at the intersection, with one car in front of him, because the controlling traffic light was red. On the sidewalk at the corner immediately ahead and to his right he observed some small boys, one of whom was the five and one half year old minor plaintiff. In evidence was a statement of the driver to the effect that the boys appeared to be waiting for the light to change in order to cross the street. When the light ahead became green, the driver, according to his testimony, proceeded forward slowly to the center of the intersection and began his right turn, the cab of his vehicle then having passed beyond the boys, who, while they remained within the driver's range of vision, were still on the sidewalk. After the cab of the vehicle had passed into the intersecting street and the driver could no longer see the boys, the plaintiff moved into the street, came in contact with the turning vehicle, and was badly crushed by a moving trailer wheel.

The plaintiff attempted to establish that the driver was negligent, under the governing Pennsylvania law, not only in the manner in which he executed the turn, but also in his failure to sound the horn beforehand to call the children's attention to his vehicle which was about to turn into their intended course.[1] The court recognized this theory in its charge, saying, among other things:

"If you find that a reasonably prudent driver of a tractor-trailer approaching this intersection as Baldwin did and seeing children on the corner, some of whom appeared to be five or six years old, would conclude that such children might be affected by his turn, then you must find that Baldwin was negligent in failing to blow his horn."

However, almost immediately thereafter, only about one hundred words later, the court also charged:

"If the minor plaintiff ran into the side of Baldwin's vehicle after the front of the vehicle had safely passed the group of children on the southwest corner and Baldwin did not and reasonably could not see behind him and observe that the minor plaintiff was in danger, no negligence could be imputed to Baldwin."

It may well be that the trial judge did not intend the second quoted sentence to limit the application of the first, but the charge was susceptible to that interpretation. The jury could well have understood the second sentence as meaning that, regardless of any other consideration, the driver should be relieved of liability if he was turning in a proper and careful manner and the plaintiff ran into the vehicle after the driver could no longer see him.[2] But this

---

1. The Pennsylvania Vehicle Code requires that "the driver of any vehicle upon a highway, before starting, stopping or turning from a direct line, shall first see that such movement can be made in safety, and, if any pedestrian may be affected by such movement, shall give a clearly audible signal by sounding the horn * * *." 75 P.S. § 1012(a).

2. Since as a matter of law a five and one half year old child could not be contributorily negligent, the plaintiff's lack of care could not be decisive.

construction would eliminate the possibility, covered by the quoted preceding sentence of the charge, of finding the driver at fault for not sounding his horn to alert the children to danger before making the turn, however proper his conduct may have been thereafter. We recognize that the court may have meant no more in the second sentence than that no negligence could be imputed to Baldwin from the mere fact of collision. However, we think the jury could well have understood that, if they should find the facts to be as stated in that sentence, the driver should be absolved without regard to any conduct which preceded the actual turn.

We have not overlooked the fact that the language in question is almost identical with that used by the Supreme Court of Pennsylvania in Chapple v. Sellers, 1950, 365 Pa. 503, 507, 76 A.2d 172, 174, 30 A.L.R.2d 1. But that opinion disclosed no issue of negligent failure to warn of impending danger before undertaking a turn. Indeed, the Chapple opinion makes it seem likely, though the point was not discussed, that on the evidence the driver there had no reason to apprehend either that the child who suffered injury was unaware of his presence or that the child was about to cross the street. What makes the present instruction prejudicial is that it may have led the jury to treat this case as if it were like Chapple, in which a finding of due care in the actual turning would necessarily be conclusive.

Exception was also taken to several statements in the charge explaining the significance and proper handling of a purported prior contradictory statement by one of the plaintiff's witnesses. The witness in question, eleven years old at the time of the accident, was the only person to testify from his own observation what part of the defendants' vehicle first struck the plaintiff. This was a contested point on the question whether the turn had been made negligently. The witness testified that the plaintiff came in contact with the right front wheel of the tractor. The defendants countered

with testimony of a police officer that shortly after the accident this witness had told him that it was the rear wheel of the tractor which struck the plaintiff. In this posture of the evidence it was for the jury to decide, at the outset, whether the witness had made the earlier statement as alleged by the police officer and, if so, whether that statement, alone or together with other factors, caused them to disbelieve the testimony of the witness that the front wheel had struck the plaintiff. It was appropriate for the court to explain to the jury the correct use of testimony asserting such a prior contradictory statement.

In its first reference to this matter, the court charged that:

"[W]here a prior statement of a witness is given it may only be considered if inconsistent with his testimony on the stand, and if you find it is so inconsistent, it just negatives the testimony that he gave on the stand, and it is not affirmative evidence. It is only offered to cancel out a different statement which he makes at the time of the trial."

Continuing and referring directly to the evidence, the court charged:

"In the statement to the police officer * * * [the witness] said that Jim hit the tractor near the rear wheels * * *. [I]f you believe that John's testimony was correct when he talked to the police officer * * *, then that just cancels out his statement [on the witness stand] * * * and you have nothing to go on as far as John is concerned as to where Jim hit the tractor."

Plaintiff's counsel excepted to this instruction and the court then explained to the jury that:

"[I]t is for you to determine whether that [prior statement] is inconsistent with what he said on the stand * * *. [T]hat does not mean you are going to find it inconsistent. It is up to you to decide whether it is inconsistent, and then

if you decide that it is, its effect is just to wash out his testimony here from the stand * * *."

■■ What the court first said on this subject was erroneous in that it made the fact of inconsistency between testimony and prior statement conclusive against crediting the testimony. See Chicago, St. P. & O. Ry. v. Kulp, 8th Cir., 1939, 102 F.2d 352, 133 A.L.R. 1445, cert. denied, 307 U.S. 636, 59 S.Ct. 1032, 83 L.Ed. 1518; Little v. Straw, 1937, 326 Pa. 577, 192 A. 894; Knies v. Kraftsow, 1944, 156 Pa.Super. 296, 40 A.2d 122. The court undertook to correct this error by explaining that this result should follow only if the jury believed that the prior statement was factually accurate, but it then added language assuming that the prior statement had actually been made as stated by the police officer, without ever telling the jury that the truth of the policeman's testimony was itself an issue of fact for them to determine. Finally, the court repeated the instruction that inconsistency between the two statements would itself be controlling.

After the jury had withdrawn, counsel for the defendant, properly concerned lest language unduly favorable to his client constitute reversible error, attempted to point out the inaccuracy of the charge, but the jury was not recalled for further instructions on this subject.

We think the net result of the charge was to leave the jury with a confused picture of how it should evaluate the only eye-witness testimony about the moment of impact in the light of the police officer's testimony concerning a prior inconsistent statement by this witness.

■ An appellate court can never be sure what effect, if any, inaccuracies in a charge may have had upon a jury. In this case, we cannot know whether the finding of no negligence was predicated upon any or all of the instructions we have discussed. However, we think the cumulative risk of prejudice on two distinct aspects of the issue of negligence was sufficient to make it appropriate for this court to require a new trial.

A final point concerns findings made on the issue of damages. Two of the special questions required the jury to find what damages had been suffered by the minor plaintiff and his parents, even though, in answer to another question, the jury should find that the defendants had not been negligent.[3] Finding no negligence, the jury proceeded as instructed and decided that the minor plaintiff's damages amounted to $16,700, his parents', to $31,284. Of course, pursuant to the finding of no negligence, judgment was entered for the defendants without regard to the damage findings. However, in its opinion denying a motion for a new trial, the court below suggested, apparently for our consideration, "that if a new trial should be required, it should be limited to the liability issue", permitting the original findings of damages to be determinative if liability should be found as a result of a second trial. The appellees urge that we follow that suggestion.

■ There are cases where, following a judgment awarding money damages, a new trial has been ordered on some issue or issues affecting liability with an attendant ruling that the original finding as to damages shall stand if liability is found on retrial. See Calaf v. Fernandez, 1st Cir., 1917, 239 F. 795; cf. McGlothan v. Pennsylvania R.R., E.D.Pa. 1947, 72 F.Supp. 176, rev'd on other grounds, 3d Cir., 1948, 170 F.2d 121; United States v. Calvey, 3d Cir., 1940, 110 F.2d 327. This procedure is subject to the caveat, applicable to partial new trials generally, that "the Court should proceed with caution, with a careful regard to the rights of both parties and only in those cases where it is plain that the error which has crept into one element of the verdict did not in any way affect the determination of any other

3. In charging the jury the court said:
   "If you answer either question 1 or 2 'No,' then the defendants are entitled to the judgment, but still it is helpful to us in our process in this case if we know your view on the damages * * *."

issue". Thompson v. Camp, 6th Cir., 1948, 167 F.2d 733, 734, cert. denied, 1948, 335 U.S. 824, 69 S.Ct. 48, 93 L.Ed. 378, following Gasoline Prod. Co. v. Champlin Ref. Co., 1931, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188.

█ The present case is unusual in that the jury's finding as to the amount of damages attended a finding of no liability. Cf. Halprin v. Mora, 3d Cir., 1956, 231 F.2d 197. Indeed, when one considers the order in which the questions were submitted and the order in which jurors would normally consider issues in a negligence case, it seems very probable that the jury had decided that the defendants were not liable before it considered the issue of damages. In these circumstances, the appellant argues that the jury may well have been influenced to make findings of damages in amounts less than the plaintiffs' actual loss, with the hope that the court could require even a non-negligent defendant to make some partial restitution for injury it had caused. However, in its opinion denying the motion for a new trial the district court directed attention to instructions calculated to make it very clear to the jury that the plaintiffs would take nothing under the damage findings unless the jury should also find that the defendants were negligent. With that understanding, the jury must have approached the question of damages as merely an intellectual exercise in the theoretical evaluation of a claim. But awareness that damages as determined by the fact finder will actually be imposed upon the defendant and awarded to the plaintiff is an important influence upon the process of arriving at a fair and meaningful verdict. Such awareness is in itself a significant safeguard against capricious or cavalier treatment of the issue of damages. On the other hand, if it is understood that the jury is deciding a moot question, some jurors, although conscientiously believing that fellow jurors are urging a damage finding that is unreasonably large or unreasonably small, may be less insistent and persistent in urging their own views than they would be if they understood that the award they were about to make would have to be paid. In general, there is too much danger that a jury will not take a moot question seriously. We think, therefore, that it is not sound judicial policy to let a damage finding stand which, in the contemplation of the jury making it, is divorced from practical effect. The risk of unfairness, whether to one party or to the other, is great enough to outweigh the value of avoiding the time and expense of a second trial of the damage issue. It follows that there must be an entire new trial of this case.

The judgment will be reversed and the cause remanded for further proceedings consistent with this opinion.