359 F.2d 913
 C. Addison HUTTON, Guardian of the Estate of Eddie Graybeal, a Minor,
v.
Joseph FISHER, Florence Fisher, His Wife, and Howard Fisher.
Joseph Fisher and Florence Fisher, Appellants.
 No. 15337.
 United States Court of Appeals Third Circuit.
 Argued December 2, 1965.
 Decided April 12, 1966.
 Rehearing Denied May 5, 1966.
 
 Fred T. Cadmus, III, West Chester, Pa. (David C. Patten, West Chester, Pa., on the brief), for appellants.
 Richard Reifsnyder, West Chester, Pa. (MacElree, Platt, Marrone & Harvey, West Chester, Pa., on the brief), for appellee.
 Before HASTIE, GANEY and FREEDMAN, Circuit Judges.
 HASTIE, Circuit Judge.
 
 
 1
 In this personal injury case defendants are appealing from an order denying their motion to set aside a default and a judgment entered thereon pursuant to a jury's assessment of damages in the amount of $195,000.
 
 
 2
 The accident in suit occurred August 5, 1958 and admittedly resulted in very severe permanently incapacitating injury to Eddie Graybeal, a minor on whose behalf this action was subsequently instituted. A week after the accident, Lawrence MacElree, Esquire, who had been retained in the interest of the injured youth wrote the defendant Joseph Fisher asking that Fisher's lawyer get in touch with him concerning a possible amicable settlement. Subsequently, Mr. MacElree met Francis Tworzydlo, Esquire, in the Chester County Courthouse and was informed that Tworzydlo was representing the Fishers in this matter. Settlement negotiations did not materialize.
 
 
 3
 This suit was filed on July 7, 1960 naming as defendants Joseph Fisher, his wife Florence and their minor son Howard. Mr. Tworzydlo asserts that he telephoned Mr. MacElree on July 29, 1960, requesting additional time to answer and was assured that he might have whatever time he wanted. Mr. MacElree states that he does not remember the conversation, but the court below credited Mr. Tworzydlo's statement, and so do we.
 
 
 4
 On October 5, 1960, Richard Reifsnyder, Esquire, who very recently had become associated with Mr. MacElree in the practice of law and to whom MacElree had assigned this case without mention of Tworzydlo's involvement in the matter, filed a motion for the entry of a default and for judgment against the three defendants, correctly averring that no appearance or answer had been filed on their behalf. The motion also contained an averment under oath that "to the best of his knowledge, information and belief", no defendant was an infant. It is now admitted that the defendant Howard Fisher was a minor, although that fact was then unknown to Reifsnyder. On October 5, 1960, the very day the motion was filed, the court entered a default as prayed and listed the case for future trial by jury to assess damages.
 
 
 5
 Jury trial had originally been demanded in the complaint, but on November 2, 1960 the plaintiff moved to transfer the case to the nonjury list and this motion was promptly granted. Then, on February 8, 1961, the plaintiff moved to place the case again on the jury list and this motion was granted.
 
 
 6
 All of the above outlined judicial proceedings after the filing and serving of the complaint were ex parte and without notice to the defendants.
 
 
 7
 Almost three years later, on October 30, 1963 the deputy clerk of the district court in charge of the calendar mailed to the defendants a notice to appear in court November 1 at 10:00 A.M. if they wished to contest the question of damages which would be tried that day. The defendants received this letter on October 31, 1963 and appeared in court the next morning accompanied by their attorney, Mr. Tworzydlo. They had received no other notice that a default had been entered against them or that damages were to be assessed.
 
 
 8
 It also appears that on October 30, 1963, before notice to the defendants, a jury was selected to try the issue of damages. When the defendants and their counsel appeared on the morning of November 1, counsel moved for a continuance on the ground that, because notice had been received only the preceding evening, the defendants were unavoidably unprepared for trial. This motion was denied, for the stated reason that a jury had already been selected and was waiting to try the matter. The court then suggested, and defense counsel orally agreed, that if subsequent consideration of the circumstances should result in setting aside the default and the question of liability should be litigated, the defendants would not seek a second assessment of damages but would be bound by whatever finding the jury should make in the hearing about to begin. The issue of damages was then tried forthwith. The jury returned a verdict of $195,000 and the same day judgment was entered on that verdict.
 
 
 9
 On November 12, 1963 the defendants moved to set aside the default and the judgment entered thereon. This matter was heard on affidavits and agreed facts. The motion was denied as to the adult defendants, Joseph and Florence Fisher, and granted as to the minor Howard Fisher.[1] Joseph and Florence Fisher have appealed.
 
 
 10
 The failure of counsel who had been retained by the defendants to ask the court for an extension of time for the filing of an answer soon after opposing counsel had given his consent was plainly negligent. Subsequently, despite his ignorance of the default entry, counsel's failure to file any pleading or take any step in the litigation in his client's interest for nearly three years and until notice of an imminent hearing to assess damages was grossly negligent and inexcusable.
 
 
 11
 Yet, we think it should be considered that the entry of default in all likelihood would have been avoided or quickly challenged but for questionable procedure and one serious, though unintentional, misrepresentation of fact by the plaintiff's counsel. The plaintiff's original and senior counsel knew that Francis Tworzydlo, a local attorney with whom he was acquainted, had been retained to defend against this claim. Moreover, about three weeks after the complaint had been filed he had acquiesced in Tworzydlo's request for more time to answer. Yet, two months later plaintiff's junior counsel requested and obtained an order of default without notice to Tworzydlo and without advising the court of the informal agreement between opposing counsel. It is candidly admitted that these omissions occurred because junior counsel was ignorant of conversations in which his senior associate had participated. In these circumstances, junior counsel undoubtedly acted in good faith and in accordance with applicable rules. But if his more informed senior associate had obtained this default without advising the court that he had consented to whatever additional time the defendant might require to answer, this withholding of relevant information would in itself have been enough to justify the setting aside of the default. In these circumstances we think failure of communication within a law office should not be permitted to impose a disadvantage upon the opposing party. Cf. Elias v. Pitucci, E.D.Pa.1952, 13 F.R.D. 13; Rogers v. Arzt, S.D.N.Y. 1941, 1 F.R.D. 581.
 
 
 12
 Another consideration stems from the fact that one of the three defendants, apparently the individual who is said to have been operating the tractor on the occasion of the plaintiff's injury, was the minor son of the two adult defendants. Rule 55, Federal Rules of Civil Procedure, clearly prohibits the entry of a default judgment against a minor until a guardian shall have been appointed for him and he shall have received notice of the application for judgment by default. In this case, the plaintiff erroneously informed the court that all of the defendants were adults and then proceeded against all of them without notice. Technically, no wrong may have been done to the adult defendants. However, the giving of legally required notice to their son and co-defendant, who was a member of their household, would have informed them of the imminence of action against them as defaulters and thus would have enabled them to take appropriate steps.
 
 
 13
 It is also noteworthy that the plaintiff, after asking in his complaint for a jury trial, subsequently moved for and obtained an order for a nonjury hearing to assess damages. Still later he again changed his position, moving for and obtaining an order for a jury trial on the issue of damages. Both of these motions were filed and granted without any notice to the defendants. While the provisions of Rules 38 and 39, Federal Rules of Civil Procedure, concerning notice and consent in connection with requests for and waivers of jury trial are not expressly made applicable to default situations in which the issue of damages must be tried, we think the requirements of notice or consent stated in those rules should in fairness and logic be applied to cases of the present type. For even one who fails to contest liability on an unliquidated claim has a vital interest in the subsequent determination of damages and is entitled to be heard on that matter. Cf. Bass v. Hoagland, 5th Cir. 1949, 172 F.2d 205; Cinque v. Langton, E.D.N.Y.1944, 8 F.R.Serv. 55b.224, case 1. Here again notice to the defendants that the plaintiff was requesting orders changing the method of trial would have alerted the defendants to the fact that the case was active and that steps needed to be taken in their behalf.
 
 
 14
 In weighing the considerations set out in the preceding paragraphs we have been mindful that this court has clearly stated its reluctance to permit the final disposition of substantial controversies by default. "Matters involving large sums should not be determined by default judgments if it can reasonably be avoided. * * * Any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits." Tozer v. Charles A. Krause Milling Co., 3d Cir. 1951, 189 F.2d 242, 245. See also Bridoux v. Eastern Air Lines, D.C.Cir. 1954, 214 F.2d 207, 210.
 
 
 15
 The matter involved in this case is substantial and the defendants have represented that if permitted to offer a defense they will show that the injured party was himself a negligent trespasser and that, in any event, the operation of the tractor involved no such extreme fault as must be established to enable a trespasser to recover. In addition, the defendant Florence Fisher seeks to show that she was neither the owner of the tractor nor in any way responsible for its operation. All of these circumstances considered, though original defense counsel may well have been the person most at fault in grossly neglecting this litigation, we think the plaintiff should not be allowed to take advantage of a default which would probably have been avoided or corrected had the plaintiff proceeded as could reasonably be expected or required at any of several stages of the litigation.
 
 
 16
 We have also considered the oral stipulation of the defendants' original counsel when the damage issue was called for trial that in the event a new trial should later be granted as to liability the issue of damages need not be tried again. Normally, any such commitment by counsel is binding upon the party who has entrusted management of the case to counsel. Yet, we cannot avoid observing that this was a remarkable stipulation. Notice of the November 1 hearing on damages had been received only the preceding evening. Counsel's motion for a continuance, made at the court's convening on November 1, had just been denied on the ground that a jury had already been selected and was waiting. Thus, it is clear that the defendants had no opportunity to prepare for trial on the issue of damages or to participate in the selection of a jury to decide this issue. We cannot see what advantage counsel may have hoped to gain for his client by agreeing to accept as finally determinative of damages an assessment made under circumstances about as disadvantageous to his clients as could be imagined. Accordingly, we would be reluctant to give effect to the stipulation were it not for still another consideration.
 
 
 17
 Even now the defendants' present new counsel does not urge that the jury's award of $195,000 is excessive. This is entirely understandable. It is admitted that the accident has made a 16 year old boy an almost helpless invalid for life. For such injury an award of $195,000 is not shocking and does not appear in any way unreasonable. Thus, we cannot say that the consequence of the stipulation has been to impose a harsh assessment upon the defendants. Absent any showing of harm to the defendants, we are constrained to let the assessment stand as agreed by counsel.
 
 
 18
 The default judgment will be vacated and the cause remanded for a trial limited to the issue of liability. If the defendants or either of them shall be found liable, judgments shall be entered for the plaintiff in the amount of $195,000.
 
 
 
 Notes:
 
 
 [1]
 The district court subsequently dismissed the action as to Howard Fisher
 
 
 
 19
 FREEDMAN, Circuit Judge (concurring in part and dissenting in part).
 
 
 20
 I concur in the majority's vacation of the default judgment but dissent from its conclusion that the jury's verdict of $195,000 is to stand in the event that a new trial results in a finding of liability against the defendants or either of them.
 
 
 21
 I would set aside the damage award and order a complete new trial because the refusal of the court below to grant a continuance of the damage trial was a clear and prejudicial abuse of discretion and denied the defendants their constitutional right to a fair trial. We are setting aside the default judgment of liability because of the combination of the negligence of the defendants' attorney and the plaintiff's failure to comply with the rules, which resulted in the entry of the default judgment with no actual notice to the defendants or their attorney. It seems to me that the inadequacy of notice as to damages flowed from similar conduct of defendants' attorney and plaintiff's counsel, this time with the additional inadequacy of the machinery of the court itself, and it therefore can have no less effect than does the lack of notice on the liability judgment.
 
 
 22
 I deal first with the stipulation. I find it impossible to conclude that defendants are bound by the stipulation which their original lawyer made. It was irrational and improvident and was the result of the utter ineffectiveness of a lawyer who was acting in circumstances in which his own interest was deeply immeshed and who yielded to judicial pressure following a breakdown in the machinery of the court which denied to the defendants due process of law.
 
 
 23
 Defendants' lawyer neglected to put in writing the agreement he made with plaintiff's counsel on July 29, 1960 that he be afforded additional time to answer the complaint. In the years which followed he never filed a pleading, never invoked any of the weapons of discovery, and even failed to enter an appearance on the defendants' behalf. He simply forgot about their case. Plaintiff's counsel, as the majority opinion shows, in undoubted good faith disregarded his presence in the case and in violation of the requirements of the rules obtained a default judgment on October 5, 1960. The machinery of the judicial process then added a fresh injustice to the defendants. On October 30, 1963, a jury was selected without any notice to defendants and on the same day the deputy clerk of the court in charge of the calendar mailed a notice to them that the trial on damages would be held on November 1, at 10:00 A.M. On the evening of October 31, 1963, the defendants' lawyer learned from his clients, whose rights he should have been guarding, that they had received that afternoon the notice from the clerk. He sought a continuance because he was unprepared for the hearing as a result of the inadequacy of the notice. The judge pointed out that the jury had already been selected and denied the motion. He then went on to say: "Of course I know something of the background of this matter from what you told me this morning prior to coming into court, but I am wondering whether there is any possibility of reaching some sort of a stipulation whereby if the liability question should be reopened, whether you would be willing to be bound by the amount of damages which this jury might find." The lawyer immediately responded: "I would so stipulate, Your Honor."
 
 
 24
 As the majority well says, this was indeed "a remarkable stipulation", made by a lawyer who was about to go unwillingly to trial of the damage issue after he himself had objected that he had not had adequate time to prepare. That his objection was well founded is obvious, and as the majority says, the circumstances of the damage trial were "about as disadvantageous to his clients as could be imagined." To me the lawyer's appearance in the judge's chambers and later in the courtroom left the defendants in the same position in which they would have been if they had had no lawyer, with the single exception that his intruding presence resulted in a stipulation which the majority now holds is a barrier to the setting aside of the damage verdict. I believe that a grossly negligent lawyer cannot be said to have represented the defendants when he agreed so irrationally to the judge's suggestion that he stipulate that the verdict in the damage trial about to be held should stand if the liability question should be reopened. A stipulation so inexplicable on any rational ground should not bind the defendants.
 
 
 25
 Moreover, the lawyer was not free to act as attorney for his clients but was forced to exercise a judgment in circumstances where his personal liability had become involved. He had learned the evening before that a judgment had been entered by default against his clients three years earlier as a result of his neglect. The calm and detached judgment which marks the difference between a legal adviser and a litigant was in these circumstances not available to the defendants. Their lawyer, who had shown his inability to serve them adequately, was now called on to serve two masters, one of whom was himself.
 
 
 26
 In addition, I believe that the setting in which the stipulation was made shows that the judicial process itself was at least in part responsible for it. With little or no experience in federal practice, the lawyer came to the judge's chambers faced with the need to set aside a default judgment already entered and an imminent trial on the question of damages in which the jury had been selected and was standing by. Improvident bargaining between the parties or their counsel would be bad enough. But it is obvious that the objection to the denial of a continuance was cast away because the suggestion to do so came from the court in circumstances which referred to the possibility of reopening the liability question. This was a distraught lawyer's yielding to a suggestion of the court, a suggestion that he should waive his objection without any reason whatever, — unless it was to please the judicial power whose discretion was being appealed to on the liability question. It seems evident to me that in the circumstances no choice was exercised and that instead of the classic requirements of a voluntary and intelligent relinquishment of a known right[1] there was here only the headlong abandonment of a fundamental right. The power which brought forth the stipulation is enough to render it involuntary. I would hold that the court's suggestion of waiver after it had erroneously refused a request for continuance was an abuse of discretion so clear that we should notice and correct it here as fundamental error.
 
 
 27
 In my view therefore the stipulation was invalid because it was both improvident and unauthorized and was the result of judicial pressure.
 
 
 28
 The majority opinion concedes the improvidence of the stipulation but gives it effect because in its view the damage award was not excessive. The stipulation therefore disappears from the case, and the majority in effect holds that regardless of the stipulation the damage verdict should stand because the refusal of a continuance, however erroneous it might have been, was harmless. In my view, however, the combined circumstances in this case were such that defendants need not prove they were harmed, because the refusal of a continuance deprived them of their constitutional right to a fair trial. They had a right to adequate notice of the damage trial so that they could properly prepare their case, they also had a right to participate in the selection of the jury which was to try the issue, and they had a right to the effective assistance of counsel.
 
 
 29
 It was improper, in my view, to have a jury, in whose selection defendants had no opportunity to participate, standing by while they were given notice to proceed practically at once to trial. They may not have had a constitutional right to trial by jury of the damage issue after default,[2] but the default is now being set aside. In any event, where a jury trial, although not constitutionally required, is held, a party is entitled to participate in the selection of the jury,[3] and the denial of this right is reversible error without a showing of prejudice. See Swain v. State of Alabama, 380 U.S. 202, 219, 85 S.Ct. 824, 13 L.Ed.2d 759 (1965). Yet here the jury already had been selected before defendants received the notice of trial.
 
 
 30
 The fundamental requirement of due process is an opportunity to be heard after adequate and reasonable notice.[4] As Mr. Justice Stewart recently said in Armstrong v. Manzo, 380 U.S. 545, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965), "It is clear that failure to give the petitioner notice of the pending * * * proceedings violated the most rudimentary demands of due process of law. `Many controversies have raged about the cryptic and abstract words of the Due Process Clause but there can be no doubt that at a minimum they require that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case.' Mullane v. Central Hanover Bank & Tr. Co., 339 U.S. 306, at 313 [70 S.Ct. 652, 94 L.Ed. 865]." (p. 550, 85 S.Ct. p. 1190) "A fundamental requirement of due process is `the opportunity to be heard.' Grannis v. Ordean, 234 U.S. 385, 394 [34 S.Ct. 779, 58 L.Ed. 1363]. It is an opportunity which must be granted at a meaningful time and in a meaningful manner." (p. 552, 85 S.Ct. p. 1191) Yet here defendants received notice that their trial would begin at 10:00 o'clock in the morning on the day following their receipt of the notice. In these circumstances notice and an opportunity to be heard, the badge of due process, become idle words if the damage verdict is permitted to stand.
 
 
 31
 The supposed reasonableness of the award is inadequate support for a judicial judgment arrived at without a fair trial. Since the possibility of prejudice is inherent in a denial of the constitutional right of the defendants to a fair trial, there is no need to prove it. The Supreme Court in Armstrong v. Manzo, supra, set aside an adoption decree because no notice of the proceeding had been given to the natural father, whose written consent was required unless he had failed to contribute to the child's support. The court held the proceeding invalid for want of notice without stopping to consider whether the father had a valid defense or whether the decree appeared to be appropriate on the merits. See also Coe v. Armour Fertilizer Works, 237 U.S. 413, 424, 35 S. Ct. 625, 59 L.Ed. 1027 (1915).
 
 
 32
 The right to counsel in criminal cases as essential to due process, is commonplace since Gideon v. Wainwright, 372 U. S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), and in such cases prejudice need not be shown. White v. State of Maryland, 373 U.S. 59, 83 S.Ct. 1050, 10 L.Ed. 2d 193 (1963). The lack of effective assistance of counsel is a deprivation equivalent to the absence of counsel.[5] Defendants in this civil case had a lawyer, but as the majority opinion shows, his intruding presence did them no good but some harm. I cannot believe that a trial in which such an elementary absence of fairness existed as a result of the inadequacy of the attorney can yield a result which should be permitted to stand consistent with the Due Process Clause in the combined circumstances of this case.
 
 
 33
 In any event, I do not know how we can judge the fairness of the amount of a verdict arrived at without due process; we have in reality not heard the defense on that subject.[6] Injustice cannot lift itself by its own bootstraps. We must therefore presume that harm was done to defendants who had no opportunity to defend.
 
 
 34
 Aside from the fundamental constitutional rights of the defendants, as a matter of practical justice the damage verdict should not be permitted to stand where the question of liability is to be retried. It is the great and saving virtue of the jury system in accident cases that it permits laymen guided by the courts on questions of law to work out in a worldly way an accommodation between the strict requirements of law and their everyday view of justice. That a defendant therefore suffers disadvantage when a trial is limited to damages and liability is conceded is a fact of life, acknowledged everywhere but in courtrooms. It is therefore evident that the defendants were prejudiced when the jury was called to determine the amount of damages without considering liability. If there were no other consideration, I believe that now that the question of liability is to be retried, the interests of justice require that the damage question be retried at the same time. The limitation of a new trial by excluding some of the issues decided is exceptional, and the power to grant a partial new trial must be "exercised with caution". Geffen v. Winer, 100 U.S.App.D.C. 286, 244 F.2d 375, 376 (1957). A retrial of liability will be less than the full relief the defendants are entitled to have, for its effect will be insulated from the damage question into which it ordinarily percolates.
 
 
 35
 We have held that a jury should not be permitted to determine the amount of damages if in doing so it may believe it is engaged in a theoretical question. This is because awareness that a defendant will actually be required to pay what the jury awards is a "significant safeguard against capricious or cavalier treatment of the issue of damages." Romer v. Baldwin, 317 F.2d 919, 922-923 (3d Cir. 1963). In the present case the charge of the court shows that the jury was not even clearly told that liability had been decided in favor of the plaintiffs and against the defendants.[7] The jury, therefore, when it decided on the amount of damages might well have speculated that liability was a separate subject under separate consideration and that their verdict might be rendered academic by its disposition. Now that the default judgment is being set aside, it seems to me unjustified to deny a new trial on damages.
 
 
 36
 I am not unmindful that in the medley of confusion on both sides, much of it in good faith, the granting of relief to the defendants, which is equitable in nature, should be surrounded by protections which a wise discretion should afford to a seriously injured minor plaintiff. In vacating both the default judgment and the award of damages, I would therefore condition this relief on the defendants' filing a bond to secure to plaintiff the payment of whatever verdict and judgment he may obtain on a new trial. I would leave the amount of the bond to the discretion of the court below, which has the means to inquire into the financial circumstances of the parties and to determine what would be appropriate.
 
 
 
 Notes:
 
 
 [1]
 Johnson v. Zerbst, 304 U.S. 458, 465, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)
 
 
 [2]
 Barber v. Turberville, 94 U.S.App.D.C. 335, 218 F.2d 34 (1954); 5 Moore, Federal Practice (1964) ¶ 38.19[3]
 
 
 [3]
 Kiernan v. Van Schaik, 347 F.2d 775 (3d Cir. 1965); see Swain v. State of Alabama, 380 U.S. 202, 209-222, 85 S.Ct. 824 (1965); Gulf, Colorado & Santa Fe Railway Co. v. Shane, 157 U.S. 348, 15 S.Ct. 641, 39 L.Ed. 727 (1895)
 
 
 [4]
 E. g., United States ex rel. Collins v. Claudy, 204 F.2d 624, 627 (3d Cir. 1953)
 
 
 [5]
 See Powell v. State of Alabama, 287 U. S. 45, 56-59, 53 S.Ct. 55, 77 L.Ed. 158 (1932); United States v. Helwig, 159 F. 2d 616 (3d Cir. 1947); Townsend v. Bomar, 351 F.2d 499 (6th Cir. 1965)
 
 
 [6]
 Indeed the record shows that defendants filed a motion for new trial claiming that the verdict was excessive. The motion was dismissed for want of prosecution when their original lawyer failed to appear for argument
 
 
 [7]
 They were told only that the matter had been "decided under the law" and that they were to have "no thought whatever about who caused the accident," and were to shut their "minds entirely as to how it happened and who caused it, who is responsible for it or anything of that kind"