William HRITZ and Cecil Hritz,
Plaintiffs,

v.

WOMA CORPORATION, a corporation, and Mining Progress, Inc., a corporation, Defendants,

v.

FLORENCE MINING COMPANY, INC., Third-Party Defendant.

Civ. A. No. 80–582.

United States District Court,
W. D. Pennsylvania.

July 14, 1981.

William Weiler, Pittsburgh, Pa., for plaintiffs.

Paul W. Roman, Jr., Pittsburgh, Pa., for Woma Corp.

George M. Weis, Pittsburgh, Pa., for Mining Progress, Inc.

Herbert Grigsby, Pittsburgh, Pa., for Florence Mining Co., Inc.

MEMORANDUM OPINION

BLOCH, District Judge.

The plaintiff, William Hritz, was injured May 2, 1978, when he was struck by a hose

that was part of a mine pumping machine. Plaintiff's attorney collected the trademark, model and serial numbers from the machine and concluded it was manufactured or distributed by the defendant, Woma Corporation. Counsel notified Woma of his clients' claim by letter dated January 17, 1979. Failing to receive a reply, counsel subsequently entered suit May 1, 1980, one day before the statute of limitations would have run on the action.

Default was entered against Woma over three months later, on August 8, 1980, Woma having failed to file an answer to plaintiffs' complaint. Plaintiffs filed their petition for entry of default judgment against Woma and notice was mailed September 8, 1980, advising all parties that a hearing would be held October 1, 1980. Judgment was entered against Woma on December 11, 1980, for $168,691.45. Plaintiffs' counsel called Woma on about January 19, 1981, to advise defendant that execution would be issued on the judgment. A letter subsequently confirmed the call.

The motion now before the court, a motion to set aside the default judgment, was filed January 30, 1981, almost eight months after the complaint was filed, almost five months after default was entered, and almost two months after judgment was entered.

The period of time stretching from plaintiffs' original claim letter dated January 17, 1979, to the filing of the motion to set aside the default judgment on January 30, 1981, is a garble of inter-corporate confusion. When all the lines of communication and shuffled documents are finally traced from their beginning to end points, we are left with the inescapable conclusion that no one, to this day, knows what happened or why to the essential document in this case, the plaintiffs' complaint. There is speculation as to likely explanations for the neglect of defendant's case, but no certainty.

Upon receiving plaintiffs' claim in January, 1979, defendant referred it to its insurance brokers, Smyth, Sanford & Gerard, Inc. of New York. Although it is not clear, Smyth, Sanford & Gerard then apparently mistakenly referred it to Sayre & Toso, Inc., the umbrella liability carriers for Woma, who advised Delaware Valley Insurance Agency, Inc., surplus line brokers whom we may speculate negotiated Woma's policy with Sayre & Toso on behalf of Smyth, Sanford & Gerard, that Ambassador Insurance Company held the primary limits. In any event, Delaware subsequently notified Ambassador of the claim in February, 1979.

Ambassador immediately referred the claim to two investigative agencies, Harold J. Smith Adjusters, Inc., which was to handle the investigation at Woma corporate headquarters in New Jersey, and the Curley Adjustment Bureau, Inc., which was to handle the investigation at the site of the accident in Pennsylvania.

In November, 1979, Curley Adjustment wrote to Harold M. Edwards, claims manager in charge of the Woma file at Ambassador Insurance, stating, "We are still awaiting word from Woma Corp. as to all details concerning the sale, installation, and servicing of the pump in question." Over two months later, Curley again complains to Edwards, "We have failed to receive a response from the Woma Corp., . . . requesting they advise us all details concerning the sale, installation and servicing of the pump in question."

Shortly thereafter, however, an investigator from Harold J. Smith apparently met with Charles Jewson, President of Woma, and advised Mr. Edwards of Ambassador Insurance by letter dated February 11, 1980, that he believed, based on his conversation with Jewson and a follow-up inquiry to Mining Progress, the other defendant in this action, that Woma did not manufacture or distribute the pump in question. Rather, he believed it was manufactured by Woma's parent, Woma Corp. of Germany, and sold directly to a German concern, Westfalia Luenen, which in turn employed the pump in a mining system manufactured by it and distributed in the United States by Mining Progress. Mr. Edwards testified in his deposition, "I can't answer why it took as long as February to get [this] information."

This piece of information then worked its painful way back up the chain of command from Ambassador to Delaware Valley Underwriting Agency on February 19, 1980, and to Smyth, Sanford & Gerard on February 28, 1980, which communicated to Delaware on May 18, 1980, that it had referred the plaintiffs' claim to the carrier for the parent corporation.

Although the deposition of Mr. Edwards, and the copious exhibits attached thereto, provide the details set forth above as to the route travelled by plaintiffs' letter claim of January 17, 1979, it offers nothing as to what happened to plaintiffs' complaint of May 1, 1980. Most notably, neither Mr. Edwards' deposition nor anything else submitted by defendant indicates that the complaint ever moved from the Woma offices. Nothing assures us that Woma simply did not choose to ignore the complaint, as it chose to ignore for several months the inquiries of Curley concerning the sale, installation and servicing of the pump in question.

Assuming Woma took some action, however, we have no way of knowing in which direction the complaint was sent. Since Woma referred the initial claim to its brokers, Smyth, Sanford & Gerard, we might assume the complaint was sent along the same path. However, Mr. Edwards seems to indicate it was more likely to have gone from Woma to Harold J. Smith, possibly because an investigator would have been in contact with Woma in connection with its investigation of the original claim. Thus, Mr. Edwards indicates a possible explanation for the lost complaint might lie with the fact that Harold J. Smith changed adjusters during the course of the investigation. Another possible explanation, Mr. Edwards postulates, might be an overworked and understaffed mail department at Ambassador, which resulted in a failure to call the complaint to his attention. But apparently the complaint has not been found to this day and so both these explanations represent no more than mere speculation. We note, however, that if the correct explanation was either that a new adjuster at Curley failed to take note of the complaint

or the mail room staff at Ambassador failed to call it to Mr. Edwards attention, we would expect the complaint to have turned up, upon closer inspection, in the files of one of these concerns.

In any event, Woma must have assumed everything was being properly handled, because it felt no need to communicate with its carrier, even upon receiving notice of the hearing on the petition for entry of a default judgment, and even after receiving notice of the entry of the judgment itself. It was only after the telephone call from plaintiffs' counsel indicating execution was imminent that Mr. Jewson felt it appropriate to contact Ambassador. The motion to set aside the default judgment followed.

■ Rule 60(b) provides: "[U]pon such terms as are just, the court may relieve a party ... from a final judgment ... for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect." A motion to set aside a default judgment is to be made within a "reasonable time," and in no event, more than a year after the entry of final judgment. The analysis to be employed in deciding such a motion in this Circuit is well-settled.

> Before removing a default judgment a court must consider whether defendant has alleged a meritorious defense, whether plaintiff would be substantially prejudiced thereby; and whether defendant's failure to respond constitutes 'excusable neglect.' The standard is construed liberally, for default judgments are regarded with disfavor. Doubts are resolved in favor of removing default judgments, because resolution on the merits best serves justice. The question is addressed to the broad, sound discretion of the court." *Gen. Tire & Rubber v. Olympic-Gardens*, 85 F.R.D. 66 (E.D.Pa.1979) (numerous citations omitted).

■ As to the first consideration, there can be no doubt that defendant Woma has set forth a meritorious defense to plaintiffs' action. If it did not manufacture or distribute the pump which is alleged to have caused the plaintiff husband's injuries, it

could not be found liable. The fact that defendant's insurance carrier reached this conclusion after an investigation which we have no reason to suspect was not conducted in good faith leads us to believe in the seriousness of the defense.

As to the question of the prejudice which would be suffered by the plaintiffs should the default be vacated, most obviously, plaintiffs are now time-barred from bringing an action against Woma's parent corporation, which Woma claims is the actual manufacturer of the pump. Of course, plaintiffs would have been time-barred from bringing such a suit the day after they filed this action on May 1, 1980, and thus 20 days before Woma could have possibly been found in default. Thus, it might be argued that plaintiffs' own inaction for two years after the plaintiff husband's accident, and not Woma's failure to plead, precipitated this particular prejudice. However, we take note that Woma, through its agents, the various insurance concerns involved in the investigation of the accident, knew three months before this action was filed that it probably did not manufacture or distribute the pump in question, but failed to advise plaintiffs' counsel. Whether or not Woma had a duty to do so is problematic. However, for the purposes of deciding this motion, we assume the plaintiffs' problem with the statute of limitations is of their own making. We also note that they still have the second defendant in this action, Mining Progress, against whom to proceed.

Nonetheless, we decline to set aside the default judgment entered against Woma because we believe Woma has utterly failed to indicate its failure to plead was occasioned by excusable neglect.

In *Robinson v. Bantam Books, Inc.*, 49 F.R.D. 139 (S.D.N.Y.1970), plaintiff sued two corporate defendants, both book publishers, for copyright infringement. After several years of fruitless negotiation between plaintiff and defendants, plaintiff filed suit and defendants were served at their offices in the Southern District of New York. By previous agreement, both defendants forwarded their complaint to the home office of the defendant, Rand McNally, in Illinois. Rand subsequently referred them to its insurance broker which in turn mistakenly referred it to the wrong office of the insurance carrier. That office forwarded it to the correct office which, in turn, appointed counsel. Counsel received the complaints a little less than a month after the time to answer had run. The court concluded, "These facts show continuing neglect, but no acceptable excuse in law." *Id.* at 141. It noted:

> "Counsel is asking this court, in effect, to establish the proposition that the inter-office confusion resulting from multi-office corporate enterprises, plus the added confusion resulting from inter-corporate agreements, should automatically excuse failure to meet the time requirements of the Federal Rules of Civil Procedure. The court holds that there is little or no merit to defendants' attempt to make the rules read: defendants shall have 20 days from the time the summons and complaint filters back to the lawyer in charge of litigation for the district in which the case is filed." *Id.* at 141–142.

We think this case is similar. Somewhere in the shuffle of papers amongst Woma and the numerous insurance concerns attached to it in some way, the complaint in this action was lost. The danger of this happening is, of course, multiplied, probably geometrically, with every corporate entity, together with its mailroom and filing system and intra-office procedures, added to the maze of entities already involved. The Federal Rules provide for 20 days to answer a complaint, whether the defendant be an individual or a corporation. It should be apparent to a corporation like Woma that simply filtering the complaint down to the insurance carrier who will ultimately be responsible for the preparation of the defense is likely to take longer than 20 days. It must take steps to expedite the process when confronted with a suit. Ultimately, as the actual entity being sued, it must take responsibility for assuring itself that what must be done has, in fact, been done.

This case should be contrasted with *Tolson v. Hodge*, 411 F.2d 123 (4th Cir. 1969), in which defendant counterclaimed against plaintiff and plaintiff's individual attorney referred it to plaintiff's insurer. Plaintiff's insurer subsequently referred it to counsel, who received the pleadings one day after the time to answer the counterclaim had run. He immediately contacted defense counsel to request an extension, which was denied. The district court's refusal to vacate the default judgment entered the same day was reversed. The Court of Appeals noted that nothing in the record suggested plaintiff himself had been responsible for the delay and, furthermore, that the seriousness of the neglect, if any, was not great.

Here, of course, we have no way of knowing just who is responsible for the delay. It is as likely to have been the defendant's fault as the insurer's fault. We note with interest that the defendant has not filed an affidavit stating it promptly forwarded the complaint upon receipt to any of the other entities involved in this paper chase. Apparently, it maintains no procedure for noting the referral of legal process to the proper party. Furthermore, whatever procedure was followed in this case did not result in the complaint ultimately reaching the responsible party, albeit a few days or even a few weeks late. Where the complaint was sent and where it ultimately came to rest remains a mystery.

In *Davis v. Safeway Store, Inc.*, 532 F.2d 489 (5th Cir. 1976), the defendant promptly mailed the complaint to its insurance carrier but no answer was filed until 18 days after the time for answering had ended. The court concluded, "The lack of communication between defendant and its insurance company for three weeks after the latter had received a copy of the complaint suggests an absence of minimal internal procedural safeguards." *Id.* at 490.

In this case, Woma failed to communicate with its insurer for the two and a half months after the time for filing an answer had ended and before default had been taken. It still failed to communicate with its insurer a month later when it received notice of the hearing on the petition for entry of default judgment. Still, it remained silent after judgment was entered three months later. Only when it was actually threatened with execution on the judgment was it moved to inquire as to the status of the case. As in *Davis*, we believe the record suggests "an absence of internal procedural safeguards."

We are left with the inescapable fact that it was the defendant, Woma, which was sued, and the defendant, Woma, which was responsible for timely filing of an answer to the complaint. Its failure to do so represents neglect, and nothing in the record would support a finding that its neglect should be excused. For this reason, defendant's motion to set aside the default judgment must be denied.

An appropriate Order will be issued.