**Andrew N. FARNESE, Appellee,**

v.

**Alberto M. BAGNASCO and Laila Covre, a.k.a. Laila Bagnasco.**

**Appeal of Alberto M. BAGNASCO, Appellant.**

Nos. 81–3130, 82–1029.

United States Court of Appeals, Third Circuit.

Argued July 7, 1982.

Decided Aug. 31, 1982.

Edwin P. Rome, Norman E. Greenspan (argued), Blank, Rome, Comisky & McCauley, Philadelphia, Pa., for Farnese.

Before SEITZ, Chief Judge, and VAN DUSEN and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

Alberto Bagnasco appeals from the entry of a final judgment against him. This court has jurisdiction under 28 U.S.C. § 1291 (1976).

On January 9, 1981, Andrew Farnese filed a complaint in the United States District Court for the Eastern District of Pennsylvania, naming Bagnasco as defendant. The complaint alleged the following facts. Plaintiff, a resident of Philadelphia, and defendant, an Italian citizen, agreed in 1972 to form a joint venture, operating under the name Farnese & Bagnasco, for the purpose of aiding Italian governmental entities in obtaining financing for public works projects. Profits from the joint venture were to be split equally between the two. The joint venture earned $1,725,000 by the end of 1973. At defendant's direction, the profits were placed in the Swiss bank account of Farnese & Bagnasco, Law Office. In 1976, at a meeting in Philadelphia, the two agreed that defendant would invest the assets of the joint venture in gold. In January 1980, plaintiff asked defendant for an accounting and distribution of the joint venture's assets. Defendant refused.

A year later this complaint was filed, alleging that defendant had fraudulently concealed the joint venture's assets, and that he would continue to do so. The complaint sought an injunction against depletion or concealment of the joint venture's assets, an accounting, and one-half of the assets. On the basis of the verified complaint and plaintiff's accompanying affidavit, the district court issued a temporary restraining order (TRO), which was to continue until January 19, at which date a hearing on the preliminary injunction was scheduled. On January 19, the original defense counsel entered an appearance on be-

Nancy Akbari (argued), Jenkintown, Pa., for Bagnasco.

half of defendant. The original defense counsel and counsel for plaintiff stipulated to the extension of the TRO until February 2, postponing the hearing on the preliminary injunction. Counsel later agreed to extend the TRO indefinitely.

On January 30, 1981, plaintiff filed an amended complaint. It differed from the original complaint only in that it also named defendant's wife as a defendant. She later successfully moved for dismissal of the complaint against her, and is no longer involved in this litigation.

The Federal Rules of Civil Procedure require a defendant to "serve his answer within 20 days after the service of the summons and complaint upon him." Fed.R. Civ.P. 12(a). Plaintiff's amended complaint extended the time limit, however. "A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer." Fed. R.Civ.P. 15(a). Defendant thus had until February 9 to file an answer. He did not do so. On March 3, plaintiff moved for entry of judgment by default under Rule 55(b) of the Federal Rules of Civil Procedure. The clerk of the district court immediately entered defendant's default under Rule 55(a), which allows the clerk to enter a default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules." Fed.R.Civ.P. 55(a).

Meanwhile, the original defense counsel had moved on March 2 to withdraw as defendant's counsel, a request the district court granted two days later. On March 3, the same day the clerk entered defendant's default, there was a pre-trial conference at which counsel for plaintiff was introduced to defendant's new counsel. Bernard Chanin. There was no court reporter present at this conference, and thus there is no record evidence of what occurred at it. Chanin apparently claimed that plaintiff and defendant had executed a letter agreement in 1972 that controlled their business relationship. A photocopy of this letter agreement was submitted to the district court in August 1981, and thus we know that the letter agreement purported to provide that any disputes arising from the venture were to be submitted to Swiss courts, and that, until further agreement, plaintiff was not to share in any earnings of the venture.

In open court on March 6, in a proceeding at which it appears that no court reporter was present, there was a colloquy between the court and counsel for the parties. What happened at this proceeding is not clear because of the absence of a record and because the only finding ever made in regard to this proceeding was simply that defendant "fail[ed]" to produce a document, the authenticity of which plaintiff wished to test, after defendant agreed to do so."

On March 18, plaintiff filed a "notice for application for default judgment," accompanied by a lengthy memorandum. Two days later, defendant, represented by new counsel, moved pursuant to Rule 55(c) to set aside the entry of default. The district court denied defendant's motion in July. Defendant moved to reconsider his motion to set aside the default, which the district court denied in October. The district court later took evidence on plaintiff's application for damages, and entered a judgment of $3.7 million against defendant, who then moved for a new trial on damages under Rule 59 of the Federal Rules of Civil Procedure. Defendant appealed from the order entering the default judgment (No. 81–3130). The district court subsequently denied the Rule 59 motion. The defendant then appealed from various orders including those refusing to reopen the default and denying reconsideration of such order (No. 82–1029).

The first notice of appeal was premature, and thus has no effect. *See* Fed.R.App.P. 4(a)(4). We will dismiss that appeal.

The primary issue in the second appeal which is properly before us is whether the district court abused its discretion in denying the motion to set aside the default entered after defendant failed to respond to

plaintiff's complaint in a timely fashion. The district court's decision is governed by Rule 55(c) of the Federal Rules of Civil Procedure, which provides that, "For good cause shown the court may set aside an entry of default...."

■ This court has required the district court to consider two factors in exercising its discretion under Rule 55(c) after entry of a default: (1) whether setting aside the default would prejudice the plaintiff, and (2) whether defendant has asserted a meritorious defense. *See Medunic v. Lederer,* 533 F.2d 891, 893 (3d Cir. 1976). Although we have not squarely held that defendant's culpability in allowing the default is also a relevant consideration, we believe that it is. *See Keegel v. Key West & Caribbean Trading Co.,* 627 F.2d 372, 373 (D.C.Cir.1980). *Cf. Livingston Powdered Metal, Inc. v. NLRB,* 669 F.2d 133, 136 (3d Cir. 1982) (citing *Keegel* with approval in a discussion of the standards for challenging a default judgment under Federal Rule of Civil Procedure 60(b)).

■ We commence our analysis by pointing out that this court has often emphasized that it does not favor defaults, and that in a close case doubts should be resolved in favor of setting aside the default and obtaining a decision on the merits. *E.g., Medunic,* 533 F.2d at 894; *Hutton v. Fisher,* 359 F.2d 913, 916 (3d Cir. 1966).

First, we find no evidence in the record, nor does plaintiff point to any, that plaintiff will be prejudiced by setting aside the default. At oral argument, counsel for plaintiff asserted that his client would be prejudiced because testing the authenticity of the 1972 letter agreement becomes more difficult with the passage of time. We express no view on the merits of this argument, because there are no facts in the record that support it, and plaintiff does not appear to have presented it to the district court. Consequently, the district court could not have relied on this argument in exercising its discretion.

Second, defendant has proffered at least one meritorious defense. If the letter agreement is authentic, then the District Court for the Eastern District of Pennsylvania is not the proper forum for resolution of their dispute, and in any event plaintiff has no claim on the assets of Farnese & Bagnasco. The letter agreement, if proved, would be the basis of a meritorious defense. *See, e.g., Keegel,* 627 F.2d at 374; *Hutton,* 359 F.2d at 916. *Cf. Tozer v. Charles A. Krause Milling Co.,* 189 F.2d 242, 244 (3d Cir. 1951) (in seeking relief under Rule 60(b) from a default judgment, the issue is whether allegations, if established, would make out meritorious defense).

Third, we consider whether defendant's culpability may have led to the default. Plaintiff does not point to, and we find no evidence of record to support a finding that defendant's conduct in allowing the default was willful or in bad faith. Nor did the district court so find. Indeed, the record tends to indicate no more than that defendant or his counsel was neglectful.

Defendant filed an affidavit in support of his motion to set aside the default. Plaintiff filed no contradictory material. Defendant explained why the default occurred. He was in Europe on January 10, when he learned of the original complaint. Defendant telexed an old friend at a large Philadelphia law firm, and asked him to represent defendant. That lawyer could not do so because of a conflict of interest, but gave defendant the name of the original defense counsel. They spoke for the first time on January 18. They had communication difficulties, and in a telephone conversation on February 25, they had a falling out. Defendant averred that he "was totally unaware that during his period of representation of me, [original defense counsel] had failed to take legal action which would preclude a default in this matter, nor did I ever authorize or instruct him not to take such proper action." Defendant was hospitalized for two weeks (January 29 to February 13) because of a "nervous collapse coupled with hysterical reaction." By this time he was in default. Defendant came to the United States on February 26, hired new counsel on March 2. The Clerk entered the default the next day.

In a motion to withdraw appearance, original defense counsel stated that he had never discussed the merits of the case with defendant. There is no evidence in the record, though, as to whether he ever warned defendant about the threat of default, and the record is similarly silent as to why original defense counsel did not at least move for an extension of time. We cannot tell why original defense counsel did not request more time, but on this record the actions of original defense counsel and defendant in allowing the default do not appear to amount to more than neglect.

■ Although we conclude that there is no record basis from which the district court could have concluded that defendant's conduct in allowing the default was willful or in bad faith, that is not the end of the matter. Plaintiff argues that the district court refused to set aside the default because of defendant's bad faith conduct subsequent to the entry of the default. We think that as a general rule material bad faith conduct by a defendant subsequent to the entry of default can, if sufficiently egregious, provide the basis for refusing to set aside a default, and thus we turn to plaintiff's argument.

Plaintiff draws our attention to the events surrounding defendant's post-default refusal to turn over the original 1972 letter agreement as evidence of defendant's bad faith and dilatory conduct. We are met with two problems when we consider plaintiff's argument: there is an inadequate record on the issue of bad faith, and the district court did not adequately explain its decision not to set aside the default. Both problems impede our appellate function in this case.

■ We emphasize at the outset that we are concerned with a vacation of a default. There was no court order directing production of the letter agreement. Thus, we are not dealing with Fed.R.Civ.P. 37, and we do not find cases such as *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976) (per curiam), and *Societe Internationale v. Rogers*, 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958), directly applicable. As in a review of Rule 37 sanctions, however, we limit our review here to the question of whether there was an abuse of discretion.

■ In determining whether the district court has abused its discretion, a court of appeals must limit its review to matters of record. Based on the record before us, we cannot uphold the district court's decision that defendant acted in bad faith. The record is, at best, ambiguous as to whether defendant acted in bad faith with respect to production of the letter agreement. Findings that are not based on evidence of record do not provide a proper basis for the district court to exercise its discretion.

The record is mostly silent about the circumstances surrounding the failure to produce the letter agreement. Defendant submitted an affidavit offering a credible explanation for his failure to produce the document: he had been advised by experts that the tests plaintiff proposed were of doubtful scientific validity. The district court presumably rejected defendant's explanation. Yet, there is no record evidence on which the district court could have relied that contradicted defendant's explanation.

■ The lack of support in the record for a finding of bad faith is apparently the consequence of a failure to make a record of the March 6 hearing that figures prominently in plaintiff's argument. It is, of course, not novel for an appellate court to express disquietude about the failure to have a court reporter present at pre-trial conferences or hearings. *See, e.g., Jaconski v. Avisun Corp.*, 359 F.2d 931, 936 n.12 (3rd Cir. 1966). But when the failure to have a court reporter present results in a record on appeal that is insufficient for us to perform our statutory duty of review, we have no choice but to remand.

We also note that the district court did not adequately explain its decision not to set aside the default. If we are to carry out our appellate function in this case, it is important that we know why the district court thought that failure to produce documents amounted to bad faith and why the

court imposed the harsh sanction of refusing to set aside the default rather than considering some lesser sanction. In the absence of a sufficient articulation of the reasons for its decision, our review of the district court's decision is almost speculative.[1]

We will, therefore, vacate the orders of the district court dated July 14, 1981 and October 21, 1981, and remand to the district court for an evidentiary hearing on the issue of material bad faith surrounding the failure to deliver the so-called letter agreement to plaintiff's counsel to have its authenticity tested. If such bad faith is found and the findings and reasons articulated, the district court should then consider whether it was justified in refusing to lift the default or whether compliance with reasonable conditions such as posting security and payment of costs and reasonable counsel fees would constitute sufficient sanctions.

The orders of the district court dated July 14, 1981 and October 21, 1981 will be vacated and the matter remanded to the district court for further proceedings consistent with this opinion. Appeal No. 81–3130 will be dismissed.

VAN DUSEN, Senior Circuit Judge, concurring:

While I join in the judgment of the court, I believe our decision is a very close one, see, for example, National Hockey League v. Met. Hockey Club, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976), and in view of the remand order, as well as in fairness to the district court, it should be made clear that there is evidence in the record indicating that there was no abuse of discretion in the district court's refusal to vacate the default judgment in October 1981.

The record contains, inter alia, these findings and temporary orders of the trial judge:

1. On January 9, 1981, the district court granted a temporary restraining order on the basis of a verified complaint and affidavit, using this wording, inter alia, in making its findings and conclusions:

". . . immediate and irreparable injury, loss, or damage will result to the plaintiff before notice can be served and a hearing had . . ., in that defendant . . . will conceal, dissipate and fraudulently convey assets and therefore plaintiff will be unable to locate these assets to which he has a lawful claim; . . .

"It is ordered that the defendant Alberto M. Bagnasco and each of his agents, successors, deputies, servants and employees, and all persons acting by, through or under him or by or through his order, are hereby restrained . . . from transferring, dissipating, encumbering, or otherwise concealing or removing from the jurisdiction of this Court:

(a) the assets and funds of the joint venture of Farnese & Bagnasco; and,

(b) the defendant's own personal assets and funds with the limited exception of expenditures necessary for the maintenance and support of defendant and his family."

(App. 008–009)

As a result of a stipulation of both counsel filed January 21, 1981, the above order was extended in all its terms until February 2, 1981. Paragraphs 2 and 3 of this stipulation provided:

"2) It is hereby understood that the parties may request an additional extension of time pursuant to which the Order Granting a Temporary Restraining Order shall remain in effect;

"3) The defendant agrees to reimburse those reasonable expenses incurred in ob-

---

1. It is true that at the subsequent hearing to fix damages—long after it had refused to reopen the default—the district court stated:

"THE COURT: My observations are that he [defendant] has just completely ignored the fact that this case is proceeding, as he

has completely ignored the commitment that he made to this Court."

However, we cannot ascertain from this record what commitments may have been made to the court and, therefore whether they fairly justified the action taken.

taining the presence of a witness who appeared at the duly scheduled hearing from Palm Beach, Florida."

On January 30, 1981, the order granting the January 9, 1981, TRO was extended in all its terms until further order of the court (App. 011).

2. The record shows that defendant's present counsel conceded in November 1981 (App. 198) during a colloquy with the district court, as follows:

"THE COURT: Well, as far as I am concerned your client fully understands the nature of these proceedings. He understands the importance of them. If he has while in one week been so ill at his home that he could not receive communications from you and on another occasion today you are reporting to me that he is no longer at his home, it certainly does nothing to increase my confidence in his believability, . . . .

"MS. AKBARI: . . . I realize that you *had* serious questions as to credibility."
(Emphasis supplied.)

3. At the same November 1981 hearing, the court made these statements at App. 199:

"THE COURT: Has he communicated with you further since our last [pre-trial] conference?

\*    \*    \*    \*    \*    \*

"MS. AKBARI: No, I have not been able to reach him. There has been no answer at the phone numbers that I have. I have tried and there have been no answers.

"THE COURT: *My observations are that he has just completely ignored the fact that this case is proceeding, as he has completely ignored the commitment that he made to this Court.*
(Emphasis supplied.)

The district judge has rejected applications to vacate the default judgment as recently as October 21, 1981 (App. 177).