732 F.2d 1178
 William HRITZ and Cecelia Hritz, Appellees,
v.
WOMA CORPORATION, a corporation and Mining Progress, Inc., a
corporation
v.
FLORENCE MINING COMPANY, INC.
Appeal of WOMA CORPORATION.
 No. 82-5607.
 United States Court of Appeals,
Third Circuit.
 Argued Jan. 27, 1984.
Decided April 23, 1984.
 
 Larry A. Silverman (argued), Paul W. Roman, Jr., Dickie, McCamey & Chilcote, Pittsburgh, Pa., for appellant.
 William A. Weiler (argued), Weiler & Dolfi, Pittsburgh, Pa., for appellees.
 Before ADAMS and GARTH, Circuit Judges, and COHEN, District Judge.*
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 In this appeal we are called upon to determine whether the trial court abused its discretion in entering a default judgment after repeated failure on the part of the defendant to respond to a district court proceeding. For the reasons set forth below, this case will be remanded to the district court to insure the conformity of the default judgment to this Court's recent decisional law.
 
 I.
 
 2
 On May 2, 1978, William Hritz was grievously injured in a mining accident. A pressure hose that was an integral part of a mine pumping machine blew off its fitting and struck Hritz in the groin area. He suffered severe penile lacerations, the loss of one testicle, impaired urinary and sexual functioning, grave emotional harms, stress to his marriage, despondency, and social humiliation. His attorney collected the trademark, model, and serial numbers from the machine responsible for Hritz' injuries and traced them to the defendant Woma Corporation, the American distributor of this type of equipment. On January 17, 1979, Woma was informed by letter from counsel of the claims, including one asserted by Hritz' wife, against the corporation for the injuries suffered and ongoing harm and treatment. Woma never responded.
 
 
 3
 After waiting considerably more than a year to hear from Woma, Mr. and Mrs. Hritz, on May 1, 1980, filed the present action in federal district court seeking compensation for the harm they suffered as a result of the accident. The complaint specified that the cause of the injuries was the "failure of a coupling on a high-pressure hydraulic hose" and gave the serial numbers of the machine responsible for the injuries. Plaintiffs were only able to allege that the machine was either manufactured by Woma or sold and distributed by Woma for a West German manufacturer, since the precise manufacturing and distribution history of the machine was not available because of defendant's earlier failure to reply. Woma never responded.
 
 
 4
 More than three months went by without response. On August 8, 1980, plaintiffs filed a petition for entry of default judgment against Woma pursuant to Fed.R.Civ.P. 55. Notice was mailed on September 8, 1980, advising all parties that a hearing would be held on October 1, 1980 to set damages to be awarded to plaintiffs under the default judgment. Woma never responded.
 
 
 5
 On December 11, 1980, the district judge entered judgment against Woma for $168,691.45 for the injuries suffered by both plaintiffs as a result of the mine accident. The judge made as detailed an inquiry as possible into the facts, given defendant's failure to provide records concerning the machine, and reviewed the specific claims for damages sought by the plaintiffs. Judgment was awarded based on the documented medical expenses of Mr. Hritz, his lost wages, his pain and suffering, and the loss of consortium by Mrs. Hritz.[1] Woma never responded.
 
 
 6
 On or about January 19, 1981, plaintiffs' counsel called Woma to inform it that execution would be issued on the judgment. A letter subsequently confirmed the telephone call. Woma never responded.
 
 
 7
 Finally on January 30, 1981--more than two-and-a-half years after the injury, more than two years after plaintiffs' counsel first wrote to Woma, more than eight months after the district court complaint was filed, and more than four months after the default judgment was entered--Woma presented a motion to set aside the judgment.
 
 
 8
 The question presented on appeal is whether under these facts, the district court's refusal to countenance this delay and further postpone the recovery of two concededly innocent people for the injuries they suffered was an abuse of discretion.
 
 II.
 
 9
 It is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court. Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir.1951). As Justice Harlan explained in the parallel context of sanctions for failure to prosecute a claim, a trial court's discretion to dismiss a complaint is a power of "ancient origin" that
 
 
 10
 has generally been considered an "inherent power," governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.
 
 
 11
 Link v. Wabash Railroad Co., 370 U.S. 626, 629-31, 82 S.Ct. 1386, 1388-1389, 8 L.Ed.2d 734 (1962); see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 765, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980). This discretion is not without limits, however, and we have repeatedly stated our preference that cases be disposed of on the merits whenever practicable. United States v. $55,518.05 in U.S. Currency, No. 82-2758, slip op. at 6 (3d Cir. Feb. 21, 1983); Gross v. Stereo Component Systems Inc., 700 F.2d 120, 122 (3d Cir.1983); Feliciano v. Reliant Tooling Co., 691 F.2d 653, 656 (3d Cir.1982); Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir.1982).
 
 
 12
 Between the extremes of repeated contumacious conduct and innocent procedural error are the manifold instances of neglect and inadvertence that require trial courts to weigh the equities of the situation and the need for the efficacious resolution of controversies. The exercise of such judgment does not lend itself to a rigid formula or to a per se rule. Rather, in exercising its discretion, the trial court must consider three factors: 1) whether the plaintiff will be prejudiced if the default is lifted; 2) whether the defendant has a meritorious defense; and 3) whether the default was the result of the defendant's culpable misconduct. U.S. v. $55,518.05, supra at 6. These factors inform both the district court's initial determination regarding a default judgment as well as appellate review of that decision.
 
 
 13
 The threshold issue in opening a default judgment is whether a meritorious defense has been asserted. In the present case, Woma claims that the machine that injured Hritz may have been marketed directly in this country by its West German manufacturer, rather than through the customary distributor, Woma. Were this so, Woma asserts, it would have a defense to plaintiffs' claims, at least for purposes of opening the default judgment. Woma need not establish the actual liability of the manufacturer beyond doubt in its pleading; a meritorious defense is presumptively established when the "allegations of defendant's answer, if established on trial would constitute a complete defense to the action." Tozer, supra, 189 F.2d at 244.
 
 
 14
 For purposes of this appeal, therefore, we can assume that a defense to the complaint has been averred.[2]
 
 III.
 
 15
 Plaintiffs filed suit on May 1, 1980, one day before the statute of limitations would have expired. In deciding whether plaintiffs had been prejudiced by defendant's conduct, the district court noted that, regardless of defendant's failure to answer the complaint, plaintiffs would have been time barred one day later from proceeding against any other party: "[t]hus, it might be argued that plaintiffs' own inaction for two years after the plaintiff husband's accident, and not Woma's failure to plead, precipitated this particular prejudice." The district court concluded that, "for the purposes of this motion, we assume the plaintiffs' problem with the statute of limitations is of their own making." Hritz v. Woma, 92 F.R.D. 364 at 367 (W.D.Pa.1981) (emphasis added).
 
 
 16
 It is clear from the foregoing that the trial judge did not fully address the prejudice issue because he found the defendant's conduct to be so irresponsible as to preclude opening the default judgment. It was therefore unnecessary for the district judge to reach the question of prejudice. This is clearly reflected in the choice of words employed by him: "it might be argued" and "for the purposes of this motion, we assume ...." Even this assumption, it must be noted, must be judged against the delay occasioned by Woma's failure to answer the original complaint letter.
 
 
 17
 Thus in deciding the issue of prejudice, Woma's failure to answer the complaint must be viewed in the context of its failure over an extended period of time to answer any claim or correspondence from the plaintiffs. It is true that, as of the day after filing, Hritz may have been time barred against the West German manufacturer of the malfunctioning machine. However, the claim had been presented to Woma considerably more than one year before the suit was initiated, and Woma's participation in the sale or handling of the specified machine could have been quickly verified in the company's files. By failing to answer, Woma in effect forced plaintiffs to allege Woma's responsibility for the machine. Given Woma's conduct, it would have mattered little whether plaintiff filed suit one day or six months prior to the expiration of the statute of limitations; Woma's failure to answer any communication would have created a time bar to proceeding against other parties, regardless of the filing date. Viewed in this light, the failure to answer the complaint is part of a pattern that threatens plaintiffs with the gravest prejudice: having their claim barred completely by the statute of limitations.
 
 
 18
 Our Court's approach to the use of procedural sanctions requires that this form of prejudice, when caused by the defendant's own conduct, should weigh substantially in favor of upholding a default judgment. Recognizing the converse, we held in Feliciano, supra, 691 F.2d at 657, that a default judgment was improper at least in part because the non-defaulting party "has not suggested that its ability to pursue the claim has been hindered since the entry of the default judgment." In reviewing decisions to impose an analogous sanction--dismissal for lack of prosecution--we have insisted that trial courts consider the effectiveness of lesser sanctions before dismissing the complaint. See Titus v. Mercedes Benz of North America, 695 F.2d 746, 749 (3d Cir.1982); Donnelly v. Johns-Manville Sales Corp., 677 F.2d 339, 342 (3d Cir.1982); Farnese, supra, 687 F.2d at 765-66. Applied to the case before us, this principle would require the trial judge to determine whether any sanction short of a default judgment would be ineffective. Since the Hritzes' claim against the manufacturer in Germany now appears to be time barred, opening the default judgment not only would free Woma from any sanction for its delay, but in fact would reward it. Thus, whether we frame the issue as a requirement that lesser sanctions be considered or as a rule that a default not be opened at the expense of an innocent plaintiff, the action of the district court appears consistent with the requirement that the non-defaulting party not be prejudiced under our Court's philosophy of procedural sanctions.[3]
 
 IV.
 
 19
 Under Feliciano and Gross, the standard for "culpable conduct" in this Circuit is the "willfulness" or "bad faith" of a non-responding defendant. Although the district court did not apply this precise term, the words "willfulness" and "bad faith" are not talismanic incantations which alone resolve the issue on appeal. These are simply terms to guide the district court by expressing this Court's preference for avoiding default judgments where the circumstances do not justify such a result. The entry of default judgment may be as proper in a case where these terms never appear as it is improper where the terms are invoked in support of arbitrary procedural adjudication.
 
 
 20
 Appropriate application of the culpable conduct standard requires that as a threshold matter more than mere negligence be demonstrated. Certainly "willfulness" and "bad faith" include acts intentionally designed to avoid compliance with court notices. The case law, however, is bereft of precedent limiting the availability of default judgment to this narrow band of "knowing" disregard for court-mandated procedures. Reckless disregard for repeated communications from plaintiffs and the court, combined with the failure to investigate the source of a serious injury, can satisfy the culpable conduct standard.
 
 
 21
 The district court weighed the culpability of Woma under a standard that required only negligence be established to sustain a default judgment. On the face of the record, there is sufficient evidence from which a trial court could have found culpable conduct. Because the district court did not have the benefit of Feliciano and Gross at the time it ruled on Woma's default, it could not have known that this case law required a finding of willfulness and bad faith. While neglect alone cannot sustain a default judgment, it goes without saying that the Hritzes should not be deprived of a judgment if the district court finds Woma guilty of culpable conduct as set forth above.
 
 
 22
 We further note that the district court found a second potential source of culpable conduct. With regard to its insurance carrier, Ambassador Insurance Company, the district court observed that Woma exhibited the same reckless disregard for the Hritzes' initial claim:
 
 
 23
 Ambassador immediately referred the claim to two investigative agencies, Harold J. Smith Adjusters, Inc., which was to handle the investigation at Woma corporate headquarters in New Jersey, and the Curley Adjustment Bureau, Inc., which was to handle the investigation at the site of the accident in Pennsylvania.
 
 
 24
 In November, 1979, Curley Adjustment wrote to Harold M. Edwards, claims manager in charge of the Woma file at Ambassador Insurance, stating, "We are still awaiting word from Woma Corp. as to all details concerning the sale, installation, and servicing of the pump in question." Over two months later, Curley again complained to Edwards, "We have failed to receive a response from the Woma Corp., ... requesting they advise us all details concerning the sale, installation and servicing of the pump in question."
 
 
 25
 Shortly thereafter, however, an investigator from Harold J. Smith apparently met with Charles Jewson, President of Woma, and advised Mr. Edwards of Ambassador Insurance by letter dated February 11, 1980, that he believed, based on his conversation with Jewson and a follow-up inquiry to Mining Progress, the other defendant in this action, that Woma did not manufacture or distribute the pump in question. Rather, he believed it was manufactured by Woma's parent, Woma Corp. of Germany, and sold directly to a German concern, Westfalia Luenen, which in turn employed the pump in a mining system manufactured by it and distributed in the United States by Mining Progress. Mr. Edwards testified in his deposition, "I can't answer why it took as long as February to get [this] information."
 
 
 26
 Hritz v. Woma, No. 80-582, mem.op. at 2 (W.D.Pa., July 14, 1981).
 
 
 27
 The relation between Woma and its insurer thus leads to another ground for liability for the failure to respond to the complaint. A manufacturer of equipment must be aware of the possibility that such equipment may cause injury; indeed, this is the basis for carrying products liability insurance. The manufacturer's responsibility (or in this case, the distributor's), however, does not terminate with its purchase of an insurance contract. The distributor or manufacturer must also have an appropriate internal procedure for processing claims resulting from a malfunctioning product. The absence of such a procedure, in effect the disregard for the possibility of injuries, is also a proper consideration in deciding whether a defendant's conduct may be deemed culpable.[4]
 
 V.
 
 28
 In reviewing a default judgment, it is incumbent upon an appellate court to bear in mind the Supreme Court's stricture in National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 642-43, 96 S.Ct. 2778, 2780-2781, 49 L.Ed.2d 747 (1976):
 
 
 29
 There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order. It is quite reasonable to conclude that a party who has been subjected to such an order will feel duly chastened, so that even though he succeeds in having the order reversed on appeal he will nonetheless comply promptly with future discovery orders of the district court.
 
 
 30
 But here, as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.
 
 
 31
 In view of the Supreme Court's willingness to uphold dismissal for failure to prosecute in Link and dismissal for failure to comply with a discovery order in National Hockey League, we do not believe that it is an abuse of discretion for a trial judge to enter a default judgment to sanction a party who has callously disregarded repeated notices of a judicial proceeding.[5] However, out of an abundance of caution this case will be remanded to the district court to insure that the judgment adequately conforms to the evolved standards for procedural sanctions explicated above. On remand, the district court should evaluate the questions of prejudice and culpable conduct in light of Gross, Feliciano, and this opinion.
 
 APPENDIX
 
 32
 In Hritz v. Woma, No. 80-582 (W.D.Pa., Dec. 11, 1980), the district court concluded:
 
 
 33
 (1) After being struck by the hose which disconnected from defendant WOMA Corporation's defectively designed hydraulic pumping machine on May 2, 1978, plaintiff William Hritz was taken by ambulance from the Florence Mining Company to Lee Hospital in Johnstown, Pennsylvania.
 
 
 34
 (2) At the hospital, it was determined that plaintiff William Hritz had suffered multiple lacerations of scrotal and penile skin, amputation of one testicle and laceration of the other testicle, head injury and contusions.
 
 
 35
 (3) Plaintiff William Hritz remained in Lee Hospital from May 2, 1978, until May 17, 1978, and was treated by Dr. Shiban K. Warikoo, a urologist, for his lacerations, a rupture of the anterior urethra and ureterocutaneous fistula.
 
 
 36
 (4) Plaintiff William Hritz was discharged from Lee Hospital on May 17, 1978, but was readmitted on May 20, 1978, suffering from an ileofemoral thrombosis in his right leg which he had developed as a result of his injuries. He was discharged from Lee Hospital on May 31, 1978.
 
 
 37
 (5) Following his discharge from the hospital on May 20, 1978, plaintiff William Hritz was seen by Dr. Warikoo for continued treatment of his injuries on July 5, 1978; August 2, 1978; September 21, 1978; and at least once in 1979 and once in 1980.
 
 
 38
 (6) Following his discharge from the hospital on May 20, 1978, plaintiff William Hritz was seen by Dr. Michael E. Sahlaney for continued treatment of his right leg on June 26, 1978; August 9, 1978; and September 11, 1978.
 
 
 39
 (7) Following his discharge from the hospital on May 20, 1978, plaintiff William Hritz returned as an outpatient to the hospital for laboratory tests on June 7, 1978; June 21, 1978; July 4, 1978; July 13, 1978; July 18, 1978; July 25, 1978; August 1, 1978; August 8, 1978; August 22, 1978; and September 19, 1978.
 
 
 40
 (8) Following his discharge from the hospital on May 20, 1978, plaintiff Cecelia Hritz was required to clean plaintiff William Hritz's penile wound two or three times each day until it was healed.
 
 
 41
 (9) Plaintiff William Hritz experienced pain when his wound was cleaned.
 
 
 42
 (10) For a period of about four months following his injuries, plaintiff was required to void his bladder through a catheter.
 
 
 43
 (11) For a period of about four months following his injuries, plaintiff was not permitted to ride in a motor vehicle or walk outside his home.
 
 
 44
 (12) Plaintiff William Hritz was not permitted to return to work after his injuries until November, 1978.
 
 
 45
 (13) In addition to his normal 40-hour work week, for which he was paid at the rate of $8.92 per hour, plaintiff worked an average of 11 hours per week overtime, for which he was paid time and one half, or $13.38 per hour.
 
 
 46
 (14) For about six weeks after his return to work in November, 1978, plaintiff William Hritz was unable to perform his duties as fully as he had done prior to his injuries.
 
 
 47
 (15) After this six week period, plaintiff William Hritz performed his regular duties, however, to this date, he experiences pain when required to do any shoveling or lifting.(16) As a result of his injuries, plaintiff William Hritz suffers an inability to control his bladder, resulting at times in accidentally wetting his clothing. This condition is likely to be permanent.
 
 
 48
 (17) As a result of his incontinence, plaintiff William Hritz has been ridiculed by his fellow workers, thereby suffering great humiliation.
 
 
 49
 (18) As a result of his injuries, plaintiff William Hritz suffers from a slow urine flow, such that it takes him 15 to 20 minutes to void his bladder. This condition is likely to be permanent.
 
 
 50
 (19) As a result of his injuries, plaintiff William Hritz suffers sexual difficulties, including difficulty in maintaining an erection, such that he and his wife have been forced to greatly reduce the frequency of their sexual relations. This condition is likely to be permanent.
 
 
 51
 (20) As a result of his injuries, plaintiff William Hritz has developed an irritable disposition.
 
 
 52
 (21) As a result of his injuries, plaintiff William Hritz incurred the following expenses: for ambulance services, $55.00; for hospital services, including anesthesiology, $4,448.00; for Dr. Warikoo's services, $1,315.00; for Dr. Sahlane's services, $30.00; and for outpatient laboratory services, $64.45.
 
 
 53
 (22) As a result of his injuries, plaintiff William Hritz lost $8,597.00 in regular wages and at least $4,182.00 in overtime pay.
 
 
 54
 (23) As a result of his injuries, plaintiff William Hritz has experienced and will continue to experience great pain, suffering and inconvenience.
 
 
 55
 (24) As a result of her husband's injuries, plaintiff Cecelia Hritz has experienced and will continue to experience a loss of consortium and her husband's companionship and services.
 
 
 56
 WHEREFORE, judgment is entered in favor of plaintiff William Hritz and against defendant WOMA Corporation in the amount of $168,691.45, representing $5,912.45 for medical expenses, $12,779.00 for lost wages, and $150,000 for past and future pain, suffering and inconvenience; and judgment is entered in favor of plaintiff Cecelia Hritz and against defendant WOMA Corporation for $100,000 for loss of consortium.
 
 GARTH, Circuit Judge, concurring:
 
 57
 I concur with the result reached in Judge Adams' opinion that it is appropriate to remand to the district court for explicit findings of fact with respect to prejudice and culpable conduct. I write separately, however, to emphasize that this court has adopted a liberal standard with respect to default judgments, see Gross v. Stereo Component Systems, Inc., 700 F.2d 120, 122 (3d Cir.1983), and to stress that it is the unique and particular function of the district court to make the factual findings which are required by the Medunic, Farnese, Feliciano, and Gross cases.[1] Our discussion of the record, therefore, cannot and should not bind the district court.
 
 
 58
 Indeed, at first blush, it would appear that the district court had found as a fact that the plaintiff had suffered no prejudice, just as it had found as a fact that Woma had a meritorious defense, thus satisfying two of the three factors found in the Medunic line of cases. However, as Judge Adams points out, the manner in which the district court addressed the subject of prejudice to the plaintiffs arguably falls short of an unequivocal finding of fact. The district court had reasoned:
 
 
 59
 As to the question of the prejudice which would be suffered by the plaintiffs should the default be vacated, most obviously, plaintiffs are now time-barred from bringing an action against Woma's parent corporation, which Woma claims is the actual manufacturer of the pump. Of course, plaintiffs would have been time-barred from bringing such a suit the day after they filed this action on May 1, 1980, and thus 20 days before Woma could have possibly been found in default. Thus, it might be argued that plaintiffs' own inaction for two years after the plaintiff husband's accident, and not Woma's failure to plead, precipitated this particular prejudice.... [F]or the purposes of deciding this motion, we assume the plaintiffs' problem with the statute of limitations is of their own making. We also note that they still have the second defendant in this action, Mining Progress, against whom to proceed.
 
 
 60
 App. 182a. Thus, while a reading of the district court's opinion might well have led to a holding that the district court had found no prejudice, it could as well be argued, as Judge Adams suggests, that a more explicit factual finding should be made as to this all-important factor.
 
 
 61
 With regard to the meritorious defense factor, the district court judge also found that "there can be no doubt that defendant Woma has set forth a meritorious defense to plaintiffs' action," App. 182a, namely, that the pump alleged to have caused Hritz' injuries was neither manufactured nor distributed by it. Hritz did not contest this finding on appeal, and so, as Judge Adams' opinion recognizes, no additional factual finding on this score is needed.
 
 
 62
 As to the third factor, i.e., whether the culpable conduct of the defendant led to the default judgment, this court has held that culpable conduct is to be defined in terms of "willfulness" or "bad faith" on the part of the defendant. See Gross, 700 F.2d at 124; Feliciano, 691 F.2d at 657. However, as Judge Adams points out (Maj.Op. at 11), neither Gross nor Feliciano had been decided at the time the district court rendered its decision in this case. The thrust of the district court's reasoning was that Woma had been neglectful and that nothing in the record could support a finding of excusable neglect. The district court judge wrote:
 
 
 63
 Here, of course, we have no way of knowing just who is responsible for the delay. It is as likely to have been the defendant's fault as the insurer's fault.
 
 
 64
 * * *
 
 
 65
 * * *
 
 
 66
 In this case, Woma failed to communicate with its insurer for the two and a half months after the time for filing an answer had ended and before default had been taken. It still failed to communicate with its insurer a month later when it received notice of the hearing on the petition for entry of default judgment. Still, it remained silent after the judgment was entered three months later. Only when it was actually threatened with execution on the judgment was it moved to inquire as to the status of the case. * * *
 
 
 67
 We are left with the inescapable fact that it was the defendant, Woma, which was sued, and the defendant, Woma, which was responsible for timely filing of an answer to the complaint. Its failure to do so represents neglect, and nothing in the record would support a finding that its neglect should be excused.
 
 
 68
 App. 184a (emphasis added).
 
 
 69
 By failing to address the subject of whether Woma's conduct was willful or in bad faith, a remand to the district court now becomes essential so that the district court may make the finding required by Farnese, Feliciano, and Gross. Now that we have established the standard of culpable conduct that must be found in order to sustain a default judgment--a standard which cannot be satisfied even by a finding of "inexcusable neglect"--it becomes even more vital that the district court be afforded an opportunity to apply that standard to the present record, or one that the court may desire to have amplified.[2] Thus it is appropriate to remand for that essential finding as well.
 
 
 70
 While it should be remembered that this court's overriding preference is the disposition of litigated matters on the merits rather than by default--and to this extent we encourage liberality in vacating default judgments--nonetheless we will uphold the district court's exercise of discretion in refusing to vacate a default judgment if the three Medunic factors are satisfied.[3] I therefore join in the remand of this case to the district court so that it may make the necessary findings of fact and comply with our recent decisions.
 
 
 
 *
 Honorable Mitchell H. Cohen, United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 See Appendix for district court's specific findings of fact concerning liability and damages
 
 
 [2]
 Although we accept, as did the district court, that the direct marketing of the machine by its foreign manufacturer would provide a defense for Woma, the local distributor, the relation between the two companies should be weighed as an equitable consideration in opening the default judgment. The claim that the wrong party was saddled with the judgment would appear to be much less compelling in the case of two interrelated corporate entities fully capable of adjusting any inequities between themselves than in the case of an inadvertently involved, independent party
 
 
 [3]
 We note that under Fed.R.Civ.P. 60(b), prejudice suffered by a non-defaulting party can be rectified through the trial court's power to impose terms and conditions upon the opening of a judgment. See Feliciano v. Reliant Tooling Co., Ltd., 691 F.2d 653, 657 (3d Cir.1982); Wokan v. Alladin International Inc., 485 F.2d 1232, 1234-35 (3d Cir.1973); 10 & 11 C. Wright & A. Miller, Federal Practice and Procedure Secs. 2700, 2857 (1973). If the case before us were remanded, the district court could consider requiring, as a condition of opening the default judgment, that Woma waive the statute of limitations on behalf of its parent corporation in Germany. Cf. McSparran v. Weist, 402 F.2d 867, 877 (3d Cir.1968) (conditioned dismissal of pending federal suits between non-diverse parties on the trial court's finding that "in the circumstances of the particular case there is ample time and opportunity for the plaintiff to institute a new action in the state court and that no unreasonable burden will be imposed on the plaintiff by the dismissal of the federal action")
 
 
 [4]
 The Fifth Circuit, for example, has held that the absence of minimal internal procedural safeguards is a sufficient basis for upholding a lower court's refusal to set aside a default judgment. Davis v. Safeway Store, 532 F.2d 489 (5th Cir.1976); Baez v. S.S. Kresge Co., 518 F.2d 349 (5th Cir.1975) (per curiam). In Davis, the lack of communication between the defendant and its insurance company for three weeks after the latter had received a copy of the complaint was sufficient to uphold the default judgment. In Kresge, the fact that the key papers were alleged to have been lost in the mail was ruled insufficient to excuse the defendant's neglect, given the absence of internal company procedures to guarantee a response once the complaint had been delivered to the company's registered agent. In neither Davis nor Kresge does the delay even approximate that caused by Woma in the present action
 
 
 [5]
 Indeed, Judge Garth recently made this precise point, albeit in a somewhat different context:
 I believe the selection of the appropriate sanction is best determined by the district court--the court that best understands the instant litigation and the docket problems to which it contributes--and not by the court of appeals. It is the district court's discretion, not ours, that should be exercised in making such a decision....
 I do not regard this case as a difficult case. Had I been sitting as a district court judge, there is no question in my mind that the poor lawyering and lack of diligence, to say nothing of the discourtesy, exhibited by [plaintiff] Titus's counsel to the court in ignoring established dates and deadlines, would have led me to dismiss Titus's complaint just as the district court did here. Nevertheless, although I could not and do not agree with a decision which would overturn the district court's order of dismissal, I can understand that others might well differ in their approach to the problem presented by Titus's failure to comply with the court's orders. But it is precisely in such a situation that the district court's decision should be left undisturbed. Although particular judges, if sitting at the trial level, might not have imposed the sanction the district court chose here, that is not the test by which a court of appeals reviews such district court judgments. The scope of our review is whether the district court abused its discretion. It is manifest to me that the district court, after learning of counsel's disregard of the court's orders on four separate occasions, acted appropriately in exercising its discretion, and when it did so, its reasons for dismissing Titus's action were more than adequately set forth.
 Titus v. Mercedes Benz of North America, 695 F.2d 746, 757-64 (3d Cir.1982) (Garth, J., dissenting). In fact, the standard advanced by Judge Garth in Titus would be a stricter standard than that which is proposed here. In Titus, Judge Garth advocated the affirmance of a dismissal of a complaint, despite the possible availability of lesser sanctions.
 
 
 [1]
 Medunic v. Lederer, 533 F.2d 891 (3d Cir.1976); Farnese v. Bagnasco, 687 F.2d 761 (3d Cir.1982); Feliciano v. Reliant Tooling Co., 691 F.2d 653 (3d Cir.1982); Gross v. Stereo Component Systems, Inc., 700 F.2d 120 (3d Cir.1983). These cases held that the three factors that must be evaluated in considering a motion to reopen a default judgment under Fed.R.Civ.P. 60(b) are (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether culpable conduct of the defendant led to the default. Gross, 700 F.2d at 122; Feliciano, 691 F.2d at 656; Farnese, 687 F.2d at 764
 
 
 [2]
 I would not preclude the district court from opening and developing the record if, in its discretion, that court deemed it necessary or desirable to do so in order to comply with our instructions
 
 
 [3]
 The district court's discretion is also sufficiently broad so as to permit the district court to condition its ruling in the event that it determines the judgment should be vacated. Judge Adams, in his opinion, appropriately refers to such considerations indicating that even where a default judgment is reopened, the district court has the discretion to condition its ruling upon a waiver by the defendant of an affirmative defense (such as the statute of limitations) and upon a consent to service where appropriate. See Maj. Op. at 1182 n. 3. I am in full accord with the possibility expressed by Judge Adams that such a condition, if deemed appropriate and depending upon the ultimate disposition of this case, be considered by the district court