**INTERIOR FINISH CONTRACTORS ASSOCIATION OF DELAWARE VALLEY**

v.

**DRYWALL FINISHERS LOCAL UNION NO. 1955.**

**Civ. A. No. 85–2961.**

United States District Court, E.D. Pennsylvania.

Dec. 4, 1985.

Jeffrey A. Smith, Philadelphia, Pa., for plaintiff.

E. Harris Baum, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

Presently before the court are defendant's motion to set aside a default, defendant's motion for assessment of attorney's fees, plaintiff's motion for assessment of attorney's fees, and cross motions for sum-

mary judgment. For the reasons stated herein, defendant's motion to set aside the default will be granted, defendant's motion for assessment of attorney's fees will be denied, plaintiff's motion for assessment of attorney's fees will be denied, plaintiff's motion for summary judgment will be denied, and defendant's motion for summary judgment will be granted.

FACTS

In February and March, 1983, three separate, but related, collective bargaining negotiations were ongoing contemporaneously. The negotiations were between plaintiff and defendant, between plaintiff and the Metropolitan District Council of Carpenters (the "MDC"), and between the General Building Contractors Association (the "GBCA") and MDC.

Plaintiff, an unincorporated trade association, represented its approximately 200 members, which were all in the business of the construction of interior walls, ceilings, and ceiling systems. Defendant, a labor organization, represented plaintiff's members' employees who tape, spackle, and finish interior walls. The GBCA,[1] a multi-employer association, represented its members. The MDC,[2] another labor organization, represented the employees of plaintiff's members who were not represented by defendant and the employees of the GBCA's members.

Collective bargaining negotiations between plaintiff and defendant ended on April 12, 1983. Plaintiff and defendant agreed on all the noneconomic terms. They agreed also to abide by the same economic terms which plaintiff and the MDC reached at the conclusion of their ongoing negotiations.

The negotiations between plaintiff and the MDC concluded on April 27, 1983. The agreement between plaintiff and the MDC provided for a wage raise of $1.75 in the first year of the agreement (the "first year"), a wage raise of $1.75 in the second year (the "second year"), and a wage raise of $2.00 in the third year (the "third year"). The plaintiff-MDC agreement included a "Most Favored Nation Clause," which meant that in the event that the GBCA and the MDC reached economic terms in the conclusion of their negotiations which were more favorable to the GBCA than the economic terms between plaintiff and the MDC, the agreement between plaintiff and the MDC[3] would automatically become amended to afford the same economic terms as between the GBCA and the MDC.

On April 28, 1983, by telephone, Joseph Fiorelli ("Fiorelli"), defendant's President and head of defendant's bargaining unit, informed plaintiff's counsel of the terms of the agreement between plaintiff and the MDC. Fiorelli orally accepted those terms on behalf of the defendant.

Subsequently, the written Collective Bargaining Agreement between plaintiff and defendant was drawn up and published. It was ratified by defendant's members and executed by the parties. The agreement provided that it would run for three years from May 1, 1983 to April 30, 1986. It provided for the following wage scale:

1. The record does not disclose the size, role, or function of the GBCA or disclose the nature of its members' business.

2. The parties do not set forth in the record the function of the MDC or the nature of the work done by its members.

3. The Most Favored Nation Clause in the collective bargaining agreement between plaintiff and MDC provided:
It is understood that if the [MDC] enters into any Agreement with any Contractor or Association engaged in commercial, industrial, or institutional construction within the area designated herein, upon more favorable terms to such other Contractor or Association than are embodied in this Agreement, this Agreement shall be amended so as to afford the party to this contract the same terms. Collective Bargaining Agreement between plaintiff and MDC, effective May 1, 1983 through April 30, 1986, in the Counties of Philadelphia, Bucks, Montgomery, Chester, and Delaware, Article 22.

| | 5/1/83 to 4/30/84 | 5/1/84 to 4/30/85 | 5/1/85 to 4/30/86 |
|------------------------------------------|-------------------|-------------------|-------------------|
| Hourly wage scale | $14.03 | $15.03 | $16.03 |
| Hourly health & welfare | 2.01 | 2.26 | 2.26 |
| Hourly pension | 1.86 | 2.36 | 2.86 |
| Hourly vacation | 1.00 | 1.00 | 1.50 |
| Hourly S. S. Tax | .07 | .07 | .07 |
| Hourly I. A. P. | | | |
| Regular Member | .05 | .05 | .05 |
| Associate Member | .05 | .05 | .05 |
| Agency Member | .10 | .10 | .10 |
| Apprenticeship Fund | .07 | .07 | .07 |
| Dues Check-Off Deduction of 3% of Hourly Rate | .42 | .45 | .48 |
| Affiliation Assessment Deduction of Three Cents of Hourly Rate | .03 | .03 | .03 |

Collective Bargaining Agreement, Article 3(j). The agreement further provided the following Most Favored Nation Clause:

It is agreed that if any terms affecting wages, hours or working conditions better than, different from, or in addition to those provided in this Agreement, or any concessions whatever are allowed by the Union to any contractor during the life of this Agreement, these better, different or additional terms or concessions shall be allowed immediately by the Union to the Employer.

Collective Bargaining Agreement, Article 2(c). No Most Favored Nation Clause, providing for a change in the level of wages under the plaintiff-defendant agreement if the level of wages under the plaintiff MDC collective bargaining agreement was changed, was included in the plaintiff-defendant collective bargaining agreement. Also, the plaintiff-defendant agreement had no provision whereby the wage structure of the plaintiff-MDC agreement was incorporated by reference. In addition, the plaintiff-defendant agreement provided for final and binding arbitration of all disputes between the parties involving interpretation of the agreement.[4]

At the end of May or the beginning of June, 1983, the GBCA and the MDC agreed on a two year contract, providing for a $1.75 raise in the first year and a $1.75 raise in the second year, with $.10 of each raise being deferred to the sixth month of each year. In October, 1984, the GBCA

---

**4.** Article 19 of the Collective Bargaining Agreement, between plaintiff and defendant, provided in pertinent part:

(a) All complaints, disputes, controversies, claims or grievances (hereinafter referred to as a dispute) arising between the parties to this Agreement involving question of interpretation, application, or breach of any party of this Agreement, or arising out of the contractual relations between the parties and their respective members shall, in the first instance, be referred to a committee or committees appointed for this purpose by the parties hereto. If they are unable to resolve the dispute, it shall be referred to the Trade Board, which Board shall constitute of three (3) members appointed by the Union and three (3) members appointed by the Employer, the decision of which shall be final and binding upon the parties to this Agreement.

. . . . .

(d) Should the Trade Board be unable to reach a resolution of the dispute and render a decision within forty-eight hours, either of the parties may request the American Arbitration Association to submit a panel of Arbitrators from whom the parties shall select an impartial chairman in accordance with the rules and regulations of the American Arbitration Association to hear the dispute. The decision of the impartial chairman shall be final and binding upon all parties to the proceedings and to this Agreement.

and the MDC agreed upon a $.75 increase for the third year.

Meanwhile, plaintiff and the MDC reconsidered the wage increase of $2.00 for the third year of their agreement. Plaintiff informed the MDC that it intended to eliminate the third year of the agreement pursuant to the Most Favored Nation provision that drew the GBCA rate of $.75 into the plaintiff-MDC agreement. Thereupon, the MDC agreed to forego the $2.00 raise and to accept a raise of $.75 in the third year.

Plaintiff then informed Fiorelli that the agreement between plaintiff and defendant was now modified under the Most Favored Nation Clause to provide for a wage increase of a mere $.75 in the third year. Fiorelli rejected this arrangement. Several discussions followed and proved fruitless. Consequently, plaintiff filed a grievance with the American Arbitration Association seeking a declaratory judgment that plaintiff's members were not compelled to pay the $2.00 raise.

An arbitration hearing was held on April 12, 1985, and the arbitrator, on April 25, 1985, ruled that plaintiff was bound by the collective bargaining agreement to pay the $2.00 raise.

On May 28, 1985, plaintiff, seeking relief from the arbitrator's award, filed four documents in the United States District Court for the Eastern District of Pennsylvania: an "Application for Vacation of an Arbitration Award," a Complaint, a proposed "Order to Show Cause," and a proposed "Order Vacating the Arbitrator's Award."

Defendant did not answer plaintiff's complaint within the twenty day period or move for an extension of time. *See* Fed.R. Civ.P. 12(a). Defendant's counsel, in a letter dated June 17, 1985, asked plaintiff's counsel for a date on which defendant should file an answer or brief. On July 5, 1985, defendant had still not filed an answer or brief. As a result, the Clerk of the Eastern District notified plaintiff's counsel that if an answer was not filed by July 16, 1985, plaintiff may file a request with the Clerk for entry of default in accordance with Rule 55 of the Federal Rules of Civil Procedure.[5] Additionally, the Clerk informed plaintiff's counsel that if the request for entry of default were not filed by July 19, 1985, the court may enter an order dismissing the case for lack of prosecution.

On July 22, 1985, no answer to plaintiff's complaint having been filed by defendant, plaintiff filed a document labeled an "Application for Default" and a supporting affidavit signed by plaintiff's counsel.

On July 23, 1985, the Clerk entered default. On the same day, defendant was served with a copy of the "Application for Default" and the supporting affidavit. On July 24, 1985, defendant filed an Answer to plaintiff's "Application for Vacation of the Arbitration Award" and an Answer to plaintiff's Complaint.[6] On the same day, defendant, through its counsel, requested that plaintiff's "Application for Default" be withdrawn. Plaintiff refused to withdraw it.

On July 30, 1985, defendant moved to set aside the default and the default judgment and to assess attorney's fees pursuant to Rule 11 of the Federal Rules of Civil Procedure. On August 9, 1985, plaintiff responded, opposing defendant's motion and moving for assessment of attorney's fees against defendant. It must be noted that no judgment by default has ever been entered in this case.

Defendant argues that the entry of default should be set aside for two reasons: (1) plaintiff did not serve defendant's counsel "with written notice of the application for judgment at least three days prior to the hearing on such application" in violation of Rule 55(b)(2) of the Federal Rules of Civil Procedure and (2) plaintiff served the "Application for Default" upon defendant and not upon defendant's attorney in viola-

---

5. Plaintiff's counsel assumed that the Clerk's July 5, 1985 notice was an "official communication from the Clerk," and that the notice was served on counsel of defendant.

6. Defendant's Answer to the "Application for Vacation of the Arbitrator's Award" and its Answer to the Complaint were filed together, affixed to the same blue backer.

tion of Rule 5(b) of the Federal Rules of Civil Procedure. Plaintiff counters that (1) service of notice of the application for judgment on defendant's counsel was not necessary because there was no hearing on the application and (2) defendant "was served, by hand delivery, with a copy of the instant Motion and Brief in support thereof, on July 30, 1985." Brief of Plaintiff at 3.

DISCUSSION

### 1. *Vacation of Default*

Federal Rules of Civil Procedure 55(c) provides:

> (c) Setting Aside Default. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

Fed.R.Civ.P. 55(c). The Third Circuit's opinion *Farnese v. Bagnoasco,* 687 F.2d 761 (3d Cir.1982) guides the court in determining whether to set aside the default. *Farnese* directs the court to consider three factors in determining whether to exercise the court's discretion and set aside the default: "(1) whether setting aside the default would prejudice the plaintiff ..., (2) whether defendant has asserted a meritorious defense," and (3) whether the default was the result of defendant's culpability. 687 F.2d at 764. *See Medunic v. Lederer,* 533 F.2d 891, 893 (3d Cir.1976).

■■■ Whether defendant has asserted a meritorious defense is the threshold issue for the court determining whether to set aside a default, as the issue is also the threshold issue for the court when determining whether to set aside a default judgment. *See Hritz v. Woma Corp.,* 732 F.2d 1178, 1181 (3d Cir.1984); *United States v. $55,518.05 in U.S. Currency,* 728 F.2d 192, 195 (3d Cir.1984). A meritorious defense is shown if the "allegations of defendant's answer, if established at trial, would constitute a complete defense to the action." *See Tozer v. Charles A. Krouse Milling Co.,* 189 F.2d 242, 244 (3d Cir.1951). Defendant's allegations must be specific and not merely "simple denials and conclusionary statements." *See* 728 F.2d at 195. In the present case, defendant asserts that

the third year rates agreed upon between plaintiff and defendant on April 28, 1983 were not conditioned upon future rate adjustments between plaintiff and MDC. In other words, defendant argues that the "Most Favored Nation Clause" in the contract between plaintiff and MDC was not incorporated into the contract between plaintiff and defendant. If defendant's assertions were correct, and established at trial, they would constitute a complete defense to plaintiff's claim. Consequently, the court finds that defendant's answer establishes a meritorious defense.

■■ The court turns next to whether plaintiff would be prejudiced if the default were set aside. Plaintiff does not assert that proof of plaintiff's case "becomes more difficult with the passage of time." *Farnese,* 687 F.2d at 764, or that plaintiff " 'has been hindered since the entry of the default ...,' by loss of evidence or otherwise." *Gross v. Stereo Component Systems, Inc.* 700 F.2d 120, 124 (3d Cir.1983). *See Feliciano,* 691 F.2d at 657. In addition, plaintiff does not assert that the court cannot rectify any prejudice to the plaintiff by imposing terms and conditions at the time of judgment. *Feliciano,* 691 F.2d at 657. Therefore, the court finds that plaintiff would not be prejudiced if the default were set aside.

■■ The court turns to the third factor. Defendant's conduct must have been culpable conduct if the default is to stand. To be "culpable" the conduct must have been willful, intentional, reckless or in bad faith. More than mere negligence is required. The court is required to consider the extent to which defendant's conduct is attributable to defendant and the extent to which it is attributable exclusively to defendant's counsel. *Hritz,* 732 F.2d at 1183. *See Poulis v. State Fire and Casualty Company,* 747 F.2d 863 (3d Cir.1984).

Although defendant's brief does not state that defendant's true dilemma, prior to July 24, 1985, was that defense counsel was bewildered about when and how to respond to plaintiff's four filed documents,

a review of the record, in particular defense counsel's letters, clearly implies that defense counsel did not know how and when to respond to plaintiff's filed documents. The present issue, therefore, is whether defendant's confusion and failure to respond was willful or in bad faith. Alternatively stated, the present issue is whether the default was brought out be defendant's culpable conduct.

■ The Federal Rules of Civil Procedure and Title 9 of United States Code set forth the appropriate procedure to apply to vacate an arbitration award. Rule 81(a)(3) of the Federal Rules of Civil Procedure, the proper starting point, states in pertinent part:

> In proceedings under Title 9, U.S.C., relating to arbitration ... these rules apply only to the extent that matters of procedure are not provided for in those statutes.

Fed.R.Civ.P. 81(a)(3). Title 9 U.S.C. § 10 states in pertinent part:

> In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—[five grounds are set forth]

9 U.S.C. § 10. Title 9 U.S.C. § 6 states the procedure by which a party makes application to vacate an arbitrator's award as follows:

> Any application to the court hereunder shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided.

9 U.S.C. § 6. Similarly, Rule 7(b)(1) of the Federal Rules of Civil Procedure provides in pertinent part:

> An application to the court for an order shall be by motion which, unless made during a hearing or trial, shall be made in writing, shall set forth the relief or order sought. The requirements of writing is fulfilled if the motion is stated in a written notice of the hearing of the motion.

Fed.R.Civ.P. 7(b)(1). In summary, after reading these statutory provisions and rules together, it is clear that a party must file a motion in order to apply to the court to set aside an arbitration. The statutes and rules do not permit a party to initiate a challenge to an arbitration award by filing a complaint or an "Application."

■ In the present case, defendant was justifiably confused, the court believes, about how to respond to plaintiff's four filed documents. In the first place, since an application to vacate an arbitration award may not be initiated by filing a complaint, defendant could not be expected to have answered plaintiff's complaint. Second, defendant was reasonably and justifiably confused as how to respond to plaintiff's "Application for Vacation of the Arbitrator's Award" (the "Application"). The "Application" was not designated as a motion as it should have been. It was accompanied by confusing, unnecessary documents, the complaint and the "Order to Show Cause." Also, plaintiff's "Application" was not accompanied by a supporting brief as required by Rule 20(d) of the Local Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania. Third, and finally, the document entitled "Order to Show Cause" was further grounds for bewilderment by the defendant. If plaintiff intended that its "Order to Show Cause" constitute a proposed order, an accompanying motion, and supporting brief, both required by the Local Rules, *supra*, were conspicuously absent. If, on the other hand, plaintiff intended that the "Order to Show Cause" constitute a pleading, that document was not one of the six pleadings authorized under Rule 7(a) of the Federal Rules of Civil Procedure. Briefly stated, defendant could not have known and, therefore, did not have to respond to plaintiff's "Order to Show Cause."

For these reasons, the defendant's counsel reacted properly and the default will be vacated.

### 2. *Assessment of Attorney's Fees.*

■ Rule 11 of the Federal Rules of Civil Procedure ("Rule 11") requires that an attorney of record certify by signing every pleading, motion, or other paper

[t]hat he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Rule 11. The rule provides, further, the authority of the court to enforce the Rule 11 certification requirement as follows:

If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Rule 11.

Rule 11 was amended by Congress in 1983. Prior to the 1983 amendments, the Rule required that an attorney certify that he had "read the pleading; that to the best of his knowledge, information and belief there is a good ground to support it; and that it is not interposed for delay." The former Rule permitted the courts to impose sanctions only where the conduct of a party or an attorney was "willful" (the "willfulness provision"). *See United States v. Standard Oil of California*, 603 F.2d 100 (9th Cir.1979). In 1983, Congress deleted from Rule 11 the willfulness provision and added the requirement that the party's or attorney's knowledge, information, and belief be formed after reasonable inquiry by the party or attorney. The new Rule 11 standard has been framed by the Second Circuit, as follows:

[s]anctions shall be imposed against an attorney and/or his client when it appears that a pleading has been interposed for any improper purpose, *or where*, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

*Eastway Construction Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir.1985).

This guideline properly focuses the court's analysis on the nature of the conduct of the parties and the attorneys. Also, the Second Circuit's directive correctly does not permit a showing that the attorney or party acted in subjective good faith as a defense to the imposition of sanctions.

The Second Circuit recognized, however, that Rule 11 must be limited so as not to "stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Eastway Construction*, 762 F.2d at 254. Rule 11 sanctions must be used only to streamline litigation, to prevent the waste of judicial and other legal resources and expenses, and to eliminate the misuse or wrongful manipulation of the federal court system. *See Schwarzer, Sanctions Under the New Federal Rule 11—A Closer Look*, 104 F.R.D. 181 (1985).

With this background, the court turns to the motions in the present case. With respect to defendant's motion, the court believes that defendant asserts four grounds upon which sanctions could be imposed: (1) plaintiff, with total disregard for the proper procedure to seek to vacate the arbitrator's award outlined in Title 9 of the United States Code and the Federal Rules of Civil Procedure, initiated this lawsuit with a document entitled an "Application for Vacation of the Arbitrator's Award;" (2) plaintiff, in disregard of the proper procedure, initiated this lawsuit with a complaint; (3) plaintiff, in disregard of the proper procedure, initiated this lawsuit with a paper designed "Order to Show Cause" and with-

out an accompanying motion or brief; and (4) plaintiff applied for default.

With respect to plaintiff's motion for sanctions, the court believes that plaintiff has three bases: (1) defendant should have construed plaintiff's "Application for Vacation of the Arbitrator's Award" as a motion under Title 9 and answered it as a motion; (2) defendant should have answered plaintiff's Complaint; and (3) defendant should have known that plaintiff had initiated the lawsuit in federal court and should have investigated the possibility that plaintiff might seek a default.

 None of the grounds offered by either party support Rule 11 sanctions in this case. With respect to defendant's motion, Rule 11 does not purport to authorize the court to sanction a party or attorney certifying documents, the labelling of which is improper under the Local Rules, but which is grounded in law and fact and not filed for an improper purpose. Additionally, the court does not believe that plaintiff's Application for Default violated Rule 11. With respect to plaintiff's motion, Rule 11 does not authorize sanctions, other than the striking of a pleading, motion, or other paper, where a party or attorney signed no pleadings, motions, or other papers.

### C. Motions for Summary Judgment.

 Before the court considers plaintiff's challenge to the arbitrator's Opinion and Award, it is necessary that the restrictions to the court's review be kept in mind as background. Strong public policy considerations mandate that the judicial review of an arbitration decision interpreting a collective bargaining agreement, be limited. Courts are generally without the technical and specialized knowledge of "the custom and practices of a particular factory or of a particular industry as reflected in particular agreements." *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1959). Arbitrators, on the other hand, have that knowledge. Consequently, parties to a collective bargaining agreement, preferring to have particular disputes under the agreement resolved by a knowledgeable arbitrator, frequently agree to have those disputes submitted to arbitration. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Teamsters Union Local No. 115 v. DeSoto, Inc.*, 725 F.2d 931 (3d Cir.1984).

 The arbitrator's decision, for which the parties bargained in the agreement, is treated with great deference by the courts. As the Supreme Court has said:

> [i]t is the arbitrator's construction which was bargained for and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Steelworkers v. Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. at 1362. *See Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123 (3d Cir.1969). Nevertheless, the court is permitted to construe the agreement, without deference to the arbitrator, to determine whether the arbitrator's award drew its essence from the collective bargaining agreement (the "essence test"). The court explained:

> [a]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Steelworkers v. Enterprise Wheel*, 363 U.S. at 597, 80 S.Ct. at 1361. The Third Circuit explained the Court's essence test in the following language:

> Accordingly, we hold that a labor arbitrator's award does "draw its essence from

the collective bargaining agreement" if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by the principles of contract construction and the laws of the shop, may a reviewing court disturb the award.

*Ludwig Honold,* 405 F.2d at 1128.

With this background, the court now turns to the present case. Plaintiff contends that the arbitrator's Award did not draw its essence from the collective bargaining agreement. In particular, plaintiff notes that the arbitrator defendant had "stated the willingness to settle for the same economic package which might be negotiated by the [MDC]," Arbitrator's Opinion at 1, and "[defendant] elected to settle for the exact economic package negotiated by the [MDC] with [plaintiff]." Arbitrator's Opinion at 6. Plaintiff argues that, since defendant agreed to be bound by the economic terms negotiated by MDC and plaintiff, defendant agreed also to be bound by the Most Favored Nation Clause insofar as that Clause affected the economic terms between MDC and plaintiff. As a result, plaintiff alleges, when the economic arrangement for the third year of the contract between MDC and plaintiff was adjusted downward, the economic terms for the third year of the contract between MDC and plaintiff was similarly adjusted.

■ The arbitrator's Opinion is open to more interpretations than the one espoused by plaintiff. If the Award granted under any one of these interpretations draws its essence from the agreement, the court must allow the arbitrator's decision to stand. *See Steelworkers v. Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361.

■ One viable interpretation is that whereas defendant agreed to be bound by the level of wages and benefits agreed upon by plaintiff and MDC in their collective bargaining agreement, defendant did not agree to be bound by a Most Favored Nation Clause in the contract between plaintiff and MDC. In other words, the arbitrator may have found that defendant did not agree to allow the level of the economic arrangement between plaintiff and defendant to be affected by negotiations other than those negotiations between plaintiff and MDC. Under this interpretation of the arbitrator's Opinion, the arbitrator determined that plaintiff and defendant agreed on the level of wages and benefits as set forth in the written collective bargaining agreement between plaintiff and defendant only and plaintiff and defendant did not agree to permit the economic terms to be affected by the negotiations between parties other than plaintiff and MDC. This agreement, as construed by the arbitrator, is rationally consistent with the arbitrator's Opinion and Award. Thus, the Award draws its essence from this agreement.

■ The arbitrator's Opinion could also be interpreted as applying the parol evidence rule. Although plaintiff and defendant agreed on April 12, 1983 to be bound by the same arrangement as that reached by plaintiff and MDC, including the Most Favored Nation Clause, the parol evidence rule presumes that the parties decided to waive that clause from their written complete and exclusive collective bargaining agreement, and, thus, intentionally omitted it. If the arbitrator's Opinion is read to apply the parol evidence rule in the present case, the court holds that the arbitrator's Award draws its essence from the collective bargaining agreement.

CONCLUSION

Accordingly, the default will be set aside, and defendant's motion for summary judgment will be granted.